Damien Gary Clark v. State of Maryland, No. 25, September Term, 2022

**RIGHT TO COUNSEL – NO-COMMUNICATION ORDER – ACTUAL DENIAL OF ASSISTANCE OF COUNSEL – PREJUDICE –** Supreme Court of Maryland[*] held that trial counsel's failure to object to trial court's order prohibiting communication between defendant and counsel during overnight recess in criminal trial, without any curative action, resulted in actual denial of assistance of counsel in violation of Sixth Amendment to United States Constitution and, under Strickland v. Washington, 466 U.S. 668 (1984), prejudice is presumed.

Supreme Court of Maryland held that where defendant alleges ineffective assistance of counsel based on trial counsel's failure to object to no-communication order preventing communication between trial counsel and defendant during overnight recess in criminal trial, presumption of prejudice is warranted under Articles 21 and 24 of Maryland Declaration of Rights, independent of Sixth Amendment to United States Constitution.

Supreme Court of Maryland declined to adopt "actual deprivation" standard, which would require that, where trial court issues no-communication order preventing communication between defendant and trial counsel during overnight recess, as a condition precedent, postconviction petitioner must prove that petitioner would have actually spoken with counsel in order to establish actual denial of assistance of counsel and therefore be entitled to presumption of prejudice. Such approach is inconsistent with Sixth Amendment to United States Constitution, Articles 21 and 24 of Maryland Declaration of Rights, Supreme Court of United States's holdings in Strickland, Geders v. United States, 425 U.S. 80 (1976), and Perry v. Leeke, 488 U.S. 272 (1989), and Supreme Court of Maryland's case law.

---

[*]At the time of the grant of the petition for a writ of *certiorari* in this case, the Supreme Court of Maryland was named the Court of Appeals of Maryland. At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Circuit Court for Howard County
Case No. C-13-CR-18-000001

Argued: March 3, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 25

September Term, 2022

_____

DAMIEN GARY CLARK

v.

STATE OF MARYLAND

_____

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

_____

Opinion by Watts, J.
Biran, J., concurs.**
Fader, C.J., Booth and Gould, JJ., dissent.

_____

Filed: August 31, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

**Two opinions received the votes of the same four Justices in this case. One is by Justice Shirley M. Watts, which Justice Michele D. Hotten, Justice Jonathan Biran, and Justice Angela M. Eaves join. Justice Watts's opinion has been designated the Majority Opinion in this case. The other opinion has been designated the Concurring Opinion of Justice Biran, which Justice Watts, Justice Hotten, and Justice Eaves join.

In this case, we must determine whether trial counsel's failure to object to a trial court's order prohibiting any consultation about the case, *i.e.*, a no-communication order, between Damien Gary Clark, Petitioner, and trial counsel during an overnight recess prior to the final day of testimony in Mr. Clark's murder trial resulted in the actual denial of the assistance of counsel, as guaranteed by the Sixth Amendment, such that prejudice is presumed under the second prong of the test set forth in Strickland v. Washington, 466 U.S. 668 (1984). This determination is necessary to resolve Mr. Clark's contention that he was provided ineffective assistance because of trial counsel's failure to object to the no-communication order by the trial court. If Mr. Clark was denied the assistance of counsel in violation of the Sixth Amendment, under the framework set forth by the Supreme Court of the United States in Strickland concerning the presumption of the prejudice, Mr. Clark need not show prejudice; rather, prejudice would be presumed. On the other hand, if there was no actual denial of the assistance of counsel, Mr. Clark must prove both deficient performance and prejudice under Strickland.

On postconviction review, the Circuit Court for Harford County ruled that the no-communication order, and trial counsel's failure to object, denied Mr. Clark the assistance of counsel in violation of the Sixth Amendment and presumed prejudice, ordering a new trial. The Appellate Court of Maryland[1] reversed the judgment of the circuit court, reasoning that no "actual deprivation" of the assistance of counsel occurred, and concluded

---

[1]At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

that Mr. Clark could not show prejudice.  See State v. Clark, 255 Md. App. 327, 331, 345, 347, 279 A.3d 1121, 1123, 1131-32 (2022).  Under the Appellate Court's approach, Mr. Clark was required to demonstrate that he desired or wanted to speak with counsel during the overnight recess and that as a result of the no-communication order he was "actually deprived" of the opportunity to do so.  Id. at 341-43, 345, 279 A.3d at 1129-31 (citation omitted).

We hold that, given the length and scope of the no-communication order, preventing communication between Mr. Clark and trial counsel about the case, and trial counsel's lack of objection which permitted the order to go into effect, the order presented a serious impediment to Mr. Clark's right to consult with counsel in violation of the Sixth Amendment and Articles 21 and 24 of the Maryland Declaration of Rights and, under the framework set forth in Strickland, prejudice is presumed.  We conclude that Mr. Clark did not need to show or demonstrate that he wanted to confer or would have conferred with his counsel during the overnight recess but for the trial court's order as a condition precedent to the presumption of prejudice due to an actual denial of the assistance of counsel.  Given the duration of the order (which covered a lengthy overnight recess) and the scope of the order (which applied to all communications about the case), the order prevented communication between Mr. Clark and trial counsel and constituted the actual denial of the assistance of counsel in violation of the Sixth Amendment and the Maryland Declaration of Rights.  Thus, prejudice is presumed.

The record shows no strategic or other value to trial counsel's failure to object, and the failure to safeguard Mr. Clark's right to consult with counsel for such an extended

period of time during such a critical stage of the trial was error. As such, the circuit court correctly concluded that trial counsel's failure to object was objectively unreasonable and that counsel's performance was deficient. We reach the same conclusion. Accordingly, we reverse the judgment of the Appellate Court of Maryland and uphold the circuit court's order of a new trial for Mr. Clark, as trial counsel's performance was deficient and Mr. Clark was prejudiced.

## BACKGROUND

### Trial and Direct Appeal

On April 18, 2018, in the Circuit Court for Howard County, Mr. Clark was charged with second-degree murder, attempted second-degree murder, and first- and second-degree assault resulting from an altercation in a convenience store between him and two other men. During the fight, Mr. Clark wounded the two men with a knife, resulting in one's death. At trial, Mr. Clark raised the issue of self-defense.

On the fourth day of trial, February 14, 2019, Mr. Clark testified. Mr. Clark's direct-examination concluded at the end of the day, and he was due to return to the witness stand the following day for cross-examination. Before adjourning, the trial judge instructed Mr. Clark that he could not to speak to anyone about the case, including his own lawyers, prior to resumption of his testimony:

THE SHERIFF: Sir, why don't you go back to your counsel?

THE COURT: And, Mr. Clark, before you do.

[MR. CLARK]: Yes, sir.

THE COURT: You can't talk to anybody about the case this evening even Mr.

- 3 -

Garcia and Ms. Mantegna.[2]  Okay?

[MR. CLARK]: Okay.

THE COURT: You can't talk to anybody.  It sounds counter intuitive.

[MR. CLARK]: Yes.

THE COURT: You can't talk to your own attorney about the case.

[MR. CLARK]: I understand, sir.

THE COURT: Okay.  You're welcome to step down.  Go back to [the] trial table.

[MR. CLARK]: Okay.  All right.

Mr. Clark's trial counsel failed to object to the instruction from the trial court.  The next day, Mr. Clark underwent cross-examination, and the defense rested.

On February 19, 2019, the jury found Mr. Clark guilty of voluntary manslaughter, attempted second-degree murder, and two counts of second-degree assault.  The jury acquitted Mr. Clark of second-degree murder and first-degree assault.  The trial court sentenced Mr. Clark to 50 years of incarceration.

On June 29, 2020, the Appellate Court of Maryland affirmed the convictions in an unreported opinion.  See Damien Gary Clark v. State of Maryland, No. 486, Sept. Term, 2019, 2020 WL 3498463, at *1 (App. Ct. Md. June 29, 2020).  Addressing Mr. Clark's contention that the trial court deprived him of his Sixth Amendment right to counsel with its instruction, the Appellate Court concluded that Mr. Clark's argument was not preserved because of the lack of an objection, despite acknowledging that the contention had merit.

---

[2]Mr. Garcia and Ms. Mantegna were Mr. Clark's two trial counsel.

See id. at *7-8. The Appellate Court declined to "hold on direct appeal . . . that the failure to object constitutes ineffective assistance of counsel as a matter of law" because of the lack of a developed record on the matter, although the Appellate Court could not "think of any reason why counsel would opt not to object to the trial judge's instruction that Mr. Clark not consult with his attorney overnight." Id. at *8. Without the ability to assess "the possibility, however slim, that counsel had a legitimate strategic or tactical reason for letting the instruction go," the Appellate Court left the issue for Mr. Clark to pursue in postconviction proceedings. Id.

### Postconviction Proceedings in the Circuit Court

On February 19, 2021, Mr. Clark filed a petition for postconviction relief and reiterated the argument that the trial court's instruction and his trial counsel's failure to object violated his Sixth Amendment right to counsel. On July 29, 2021, the circuit court held a hearing on Mr. Clark's petition and the State of Maryland's, Respondent's, response. Mr. Clark's trial counsel, Tony Garcia, testified that, at the time of Mr. Clark's trial, he had been practicing criminal law for over 20 years, including time as a prosecutor and defense attorney, and he had tried over 100 trials of all types.

In response to a question from Mr. Clark's postconviction counsel regarding his reason for not objecting to the trial court's no-communication order, Mr. Garcia testified: "At the time, I didn't think there was anything for us to talk about that evening. We had talked that morning, I guess when I delivered the suit to him. We talked during the trial, right before lunch. I believe, you know, at every break." Mr. Garcia testified: "[T]he answer is that I just didn't have anything to go over with him because I thought he was

doing good on the witness stand." Mr. Garcia elaborated that at the time he could not call and speak to Mr. Clark in the jail, but had to meet him in person and "the issue would have been, did I want to go back downstairs in the sheriff's lockup and see [Mr. Clark] that day[.]" However, Mr. Garcia added that "at the end of each day, I would always ask [Mr. Clark] if he had any questions or anything like that." In response to Mr. Clark's postconviction counsel's question about whether he was familiar with Geders v. United States, 425 U.S. 80 (1976), Mr. Garcia testified that he was not, but that he knew that Mr. Clark had a right to speak with him: "I know he had a right to talk to me and if he said he had anything to say, I would have talked to him."

On cross-examination, Mr. Garcia testified that he had extensively prepared Mr. Clark for his testimony, both direct- and cross-examination, and that he did not have any concerns at the conclusion of Mr. Clark's direct-examination that he would have addressed in a meeting with him. Mr. Garcia testified that he could have objected, but that in the moment he "didn't have anything to ask [Mr. Clark]," and Mr. Clark "didn't say, hey, I want to talk to you." The State asked Mr. Garcia: "Had Mr. Clark said, I want to speak to my attorney, would you have advocated on his behalf[?]" and Mr. Garcia responded: "Absolutely." Mr. Garcia testified that, looking back, his reaction was "wow, I should have objected but was I going to meet with him or say anything that night? The answer is no. And he didn't ask me." Significantly, although Mr. Clark testified at the postconviction hearing, he was not asked, and did not testify, about the no-communication order or whether he had wanted to speak with counsel during the recess.

Mr. Garcia was not asked and offered no testimony as to whether, independent of

his observation that Mr. Clark did not say he wanted to speak with him while in the courtroom, he knew whether Mr. Clark developed the desire to speak with him later during the recess or whether Mr. Clark had wanted to waive the right to counsel. Mr. Garcia also offered no testimony as to whether it would have been desirable or advantageous for him to speak to Mr. Clark about matters other than his testimony, such as a potential plea bargain, rebuttal witnesses for the State, or next steps in the trial.

On September 28, 2021, the circuit court granted Mr. Clark's requested postconviction relief, ordering a new trial. The circuit court held that the no-communication order was an error in direct conflict with the Supreme Court's precedent in Geders and violated Mr. Clark's Sixth Amendment rights. The circuit court concluded that "[n]one of trial counsel's testimony indicated that there was a legitimate strategic or tactical reason for letting the instruction go." (Cleaned up). The circuit court characterized Mr. Garcia's testimony as conceding that he should have objected to the order. Because "[t]he Sixth Amendment right to counsel belongs solely to the individual on trial and cannot be waived by his attorney[,]" the circuit court concluded that Mr. Garcia could not waive Mr. Clark's right to counsel, which was violated because Mr. Clark "may have desired to [consult with counsel], but was not able to due to the trial court's instruction." The circuit court viewed the facts of the case as essentially the same as in Geders. The circuit court held that Mr. Clark "was prejudiced by trial counsel's failure to object not only because he was deprived of his Sixth Amendment right to counsel during the overnight recess, but also because he was not able to raise the issue on appeal due to trial counsel's failure to object to the erroneous instruction." The State filed an application for leave to appeal, which the

Appellate Court of Maryland granted.

## Opinion of the Appellate Court of Maryland

On July 28, 2022, a divided panel of the Appellate Court of Maryland reversed the circuit court's judgment. See Clark, 255 Md. App. at 331, 279 A.3d at 1123. The Appellate Court distinguished this case from both Geders and Perry v. Leeke, 488 U.S. 272 (1989), because, in those cases, trial counsel had objected to the order, whereas in Mr. Clark's case, trial counsel had not. See Clark, 255 Md. App. at 339, 279 A.3d at 1127-28. The Appellate Court held that, "although an order to the defendant not to discuss his or her testimony with anyone during an overnight recess is improper, it does not, by itself, constitute a deprivation of the right to counsel." Id. at 345, 279 A.3d at 1131. Rather, according to the Appellate Court, to show that the no-communication order "resulted in a violation of the defendant's Sixth Amendment right to counsel, there must be some evidence that there was an actual deprivation of counsel." Id. at 345, 279 A.3d at 1131. In reaching this conclusion, the Appellate Court relied on decisions by courts in other jurisdictions that had utilized an "actual deprivation" standard, such as the Third Circuit's holding in Bailey v. Redman, 657 F.2d 21 (3d Cir. 1981) (per curiam), cert. denied, 454 U.S. 1153 (1982), which the Court found to be more persuasive than the case cited by Mr. Clark for the opposite proposition. See Clark, 255 Md. App. at 342-45, 279 A.3d 1129-31. The Appellate Court concluded that Mr. Clark was not entitled to the presumption of prejudice and had failed to demonstrate prejudice. See id. at 345-47, 279 A.3d 1131-32.

The Appellate Court discussed Weaver v. Massachusetts, 582 U.S. 286 (2017), which the Appellate Court stated held "that a violation of the right to a public trial requires

automatic reversal on direct appeal, but when it is raised as part of an ineffective assistance of counsel claim, it is still analyzed under the *Strickland* framework." Clark, 255 Md. App. at 339, 279 A.3d at 1128. The Appellate Court quoted cases in which this Court has discussed ineffective assistance of counsel, such as Newton v. State, 455 Md. 341, 168 A.3d 1 (2017), cert. denied, ___ U.S. ___, 138 S. Ct. 665 (2018), and Ramirez v. State, 464 Md. 532, 212 A.3d 363 (2019), cert. denied, ___ U.S. ___, 140 S. Ct. 1134 (2020). See Clark, 255 Md. App. at 339-40, 279 A.3d at 1128. Based on this case law, the Appellate Court concluded that, "because this case is before us in the posture of review of a post-conviction claim of ineffective assistance of counsel, we do not address the merits of the trial court error." Id. at 340, 279 A.3d at 1128.

The Appellate Court described the "lens" for addressing Mr. Clark's claim: the Strickland test, requiring the defendant to prove both deficient performance of counsel and that prejudice resulted. Clark, 255 Md. App. at 340, 279 A.3d at 1128. The Appellate Court concluded that Mr. Clark's ineffective assistance of counsel claim failed because he had "failed to prove that he was prejudiced by counsel's failure to object to the court's instruction."[3] Clark, 255 Md. App. at 340, 279 A.3d at 1128. The Appellate Court explained that Mr. Clark needed to establish prejudice by showing either "(1) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; or (2) that the result of the proceeding was

---

[3]Because under Strickland, 466 U.S. at 697, the Appellate Court was "not required 'to address both components of the inquiry if the defendant makes an insufficient showing of one[,]'" it focused on the prejudice issue and did not assess the performance of Mr. Clark's trial counsel. Clark, 255 Md. App. at 340, 279 A.3d at 1128.

fundamentally unfair or unreliable." Id. at 340, 279 A.3d at 1128 (quoting State v. Syed, 463 Md. 60, 86, 204 A.3d 139, 154 (2019)) (internal quotation marks omitted). The Appellate Court noted that prejudice is presumed "in certain Sixth Amendment contexts," such as when "(1) the petitioner was actually denied the assistance of counsel; (2) the petitioner was constructively denied the assistance of counsel; or (3) the petitioner's counsel had an actual conflict of interest." Id. at 341, 279 A.3d at 1129 (quoting Ramirez, 464 Md. at 573, 212 A.3d at 387) (internal quotation marks omitted).

But, the Appellate Court stated, "to show a deprivation of the right to counsel in this context, there must be a showing that the instruction actually prevented the defendant and defense counsel from communicating." Id. at 341, 279 A.3d at 1129. The Appellate Court concluded that an objection by counsel to a court's instruction not to communicate "indicates that, 'absent the court's instruction, Defendant would have met with his counsel.'" Id. at 342, 279 A.3d at 1129 (quoting Wallace v. State, 851 So. 2d 216, 220 (Fla. Dist. Ct. App.), review denied, 860 So.2d 980 (Fla. 2003), cert. denied, 540 U.S. 1187 (2004)). The Appellate Court reasoned that there was no prejudice to Mr. Clark because "there was no objection to the instruction, nor was there any showing that the court's instruction deprived [Mr. Clark] of the right to assistance of counsel." Id. at 342, 279 A.3d at 1129. The Appellate Court observed that trial counsel's postconviction testimony indicated that he had nothing to discuss with Mr. Clark, and that Mr. Clark testified but "did not testify that he would have talked to counsel absent the court's instruction." Id. at 342, 279 A.3d at 1129.

In a dissenting opinion, the Honorable Douglas R. M. Nazarian concluded that "Mr.

- 10 -

Clark's Sixth Amendment rights were violated, in real life terms and in constitutional terms, when the court wrongly forbade him from conferring with counsel[,]" "because the right to counsel was Mr. Clark's, not his counsel's to waive or neglect away." Clark, 255 Md. App. at 348-49, 279 A.3d at 1133 (Nazarian, J., dissenting). The dissent distinguished the cases relied on by the majority in setting an "actual deprivation" standard. See Clark, 255 Md. App. at 360, 279 A.3d at 1140 (Nazarian, J., dissenting). The dissent pointed out that Bailey, 657 F.2d 21, was the basis for the Fourth Circuit's reasoning in Stubbs v. Bordenkircher, 689 F.2d 1205 (4th Cir. 1982), and, in turn, in Perry, which the Supreme Court rejected in that case. See Clark, 255 Md. App. at 360-62, 279 A.3d at 1140-41 (Nazarian, J., dissenting). The dissent distinguished United States v. Nelson, 884 F.3d 1103 (11th Cir. 2018), factually, because in that case the defendant's lawyer requested to speak with the defendant during an overnight recess about topics other than the defendant's testimony, which the trial court granted, whereas Mr. Clark was forbidden from discussing not only his testimony but also any other matters about trial with his lawyer. See Clark, 255 Md. App. at 362-64, 279 A.3d at 1141-42 (Nazarian, J., dissenting). Similarly, the dissent distinguished the facts of Wallace, 851 So. 2d 216, because the instruction to not communicate in that case applied to a lunch recess that was more like Perry's 15-minute break than the overnight prohibition in Geders and here. See Clark, 255 Md. App. at 364-65, 279 A.3d at 1143 (Nazarian, J., dissenting). Unlike the majority, the dissent found persuasive Martin v. United States, 991 A.2d 791, 795-96 (D.C. 2010), a case in which the District of Columbia Court of Appeals relied on the Supreme Court's emphasis that "the right to counsel does not depend upon a request by the defendant, and courts indulge in

every reasonable presumption against waiver[,]" such that the government has the burden to prove a valid waiver of the right. Clark, 255 Md. App. at 365-67, 279 A.3d at 1143-44 (Nazarian, J., dissenting) (cleaned up).

The dissent pointed out that, in Perry, the Supreme Court held "'that a showing of prejudice is not an essential component of a violation of the rule announced in *Geders*'" and that the rule announced in Geders "makes no mention of any requirement that a defendant prove an actual real-time desire to meet with counsel during the overnight recess as a condition of proving that they were deprived of the assistance of counsel." Clark, 255 Md. App. at 362, 279 A.3d at 1141 (Nazarian, J., dissenting) (citations omitted). The dissent explained that Mr. Clark presented a straightforward Geders claim and determined that, "under the binding and most analytically congruent cases—*Geders*, *Perry*, and *Wooten-Bey*[ *v. State*, 76 Md. App. 603, 547 A.2d 1086 (1988), aff'd, 318 Md. 301, 568 A.2d 16 (1990)]—the trial court's no-communication directive" deprived Mr. Clark of his Sixth Amendment right to confer with counsel by its very nature. Id. at 367, 371, 279 A.3d at 1144, 1146 (Nazarian, J., dissenting). The dissent would have concluded that, as a result, Mr. Clark was entitled to a presumption of prejudice. See id. at 349, 279 A.3d at 1134 (Nazarian, J., dissenting). The dissent faulted the majority's holding regarding Mr. Clark's need to show prejudice as erroneously establishing the proposition that "the court can take away a defendant's right to counsel unless he proves that he planned to use it right then, never mind the court ordering him not to." Id. at 377, 279 A.3d at 1150 (Nazarian, J., dissenting). The dissent observed that the Supreme Court has emphasized the significance of a fair trial in ineffective assistance of counsel cases, and reiterated that an actual denial

of the assistance of counsel relieves the defendant of proving prejudice because "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." Id. at 355, 279 A.3d at 1137 (Nazarian, J., dissenting) (quoting United States v. Cronic, 466 U.S. 648, 659 (1984)).

## Petition for a Writ of *Certiorari*

On, August 15, 2022, Mr. Clark petitioned for a writ of *certiorari*, raising the following four issues:

> I. As a matter of first impression, does requiring a criminal defendant to retroactively prove his desire to defy the trial court's order against speaking with his attorney about his case during an overnight recess violate his constitutional right to counsel?
>
> II. Does permitting counsel to neglect or waive his client's right to speak with him during an overnight recess violate that client's constitutional right to counsel?
>
> III. Was the post-conviction court's ruling that prejudice was found from trial counsel not preserving the issue for appeal correct?
>
> IV. Is not objecting to the violation of a criminal defendant's right to counsel due to mere ignorance of the law deficient performance?

On November 18, 2022, we granted the petition. See Clark v. State, 482 Md. 141, 284 A.3d 848 (2022).

## DISCUSSION[4]

### The Parties' Contentions

Mr. Clark contends that requiring him to demonstrate that he was prejudiced as a

---

[4]As the four questions presented are interrelated, we address them together.

result of "trial counsel not objecting to the trial court's order prohibiting their communication . . . during an overnight recess eviscerates his constitutional right to the effective assistance of counsel[.]" Mr. Clark contends that all binding precedent supports determining a presumption of prejudice in this case, particularly Supreme Court of the United States cases <u>Geders</u>, <u>Perry</u>, and <u>Strickland</u>. Mr. Clark argues that, in multiple decisions addressing ineffective assistance of counsel, the Supreme Court has consistently reaffirmed the presumption of prejudice resulting from denial of access to counsel during a critical stage of trial, such as an overnight recess. Mr. Clark asserts that several United States Courts of Appeals have upheld the <u>Geders</u> presumption of prejudice as applicable to cases similar to his, and that the majority of State high courts that have considered the issue have applied <u>Geders</u>'s presumption of prejudice to cases involving instructions not to communicate.

Mr. Clark contends that requiring him to prove at a postconviction hearing that he would have spoken with trial counsel during an overnight recess in order to establish prejudice is impractical. It would, Mr. Clark maintains, require a court to speculate about what he would have wanted to discuss with counsel absent the trial court's order, rather than rely on the record. Mr. Clark argues that it would be unreasonable to expect him to have objected to the trial court's order in light of trial counsel's failure to do so, and similarly unreasonable to expect him to remember years later whether he wanted to speak with trial counsel during the prohibited time. Mr. Clark contends that the Appellate Court of Maryland's decision requiring that a petitioner produce such proof places too heavy a burden on the petitioner. Mr. Clark also asserts that requiring a showing of prejudice would

infringe on the right to private communication with counsel, because such an approach would improperly allow "a rule whereby private discussions between counsel and client could be exposed in order to let the government show that the accused's sixth amendment rights were not violated." (Quoting Mudd v. United States, 798 F.2d 1509, 1513 (D.C. Cir. 1986)) (cleaned up).

Mr. Clark stresses that the Sixth Amendment right to counsel belonged to him and not to trial counsel, and that trial counsel could not waive his right by failing to object. Mr. Clark also argues that his trial counsel's failure to preserve the issue by objecting was prejudicial under Maryland case law, because "1) [] competent appellate counsel would have chosen to raise such an issue, had it been preserved, and 2) [] the issue had a reasonable probability of being successful on appeal." (Quoting State v. Gross, 134 Md. App. 528, 585, 760 A.2d 725, 755 (2000)) (internal quotation marks omitted).

The State responds that the Appellate Court of Maryland correctly reversed the circuit court's order for a new trial. The State argues that "the Appellate Court rightly held, joining a consensus of authority from other courts, a Sixth Amendment deprivation of the type recognized in *Geders* is not established unless a court's no-communication directive *actually prevents* the defendant and defense counsel from communicating." (Emphasis in original). According to the State, the result is that no presumption of prejudice applies and, therefore, Mr. Clark's failure to show prejudice dooms his claim under Strickland.

The State asserts that "a *Geders* error requires a showing that the directive caused 'an actual "deprivation" of counsel[,]' *Nelson*, 884 F.3d at 1109[,]" such as "'by demonstrating that [the defendant] wanted to meet with his attorney but was prevented

from doing so by the instruction of the trial judge.' *Stubbs* [], 689 F.2d [at] 1207 []." The State argues that this is not the same as "requiring the defendant to show prejudice resulting from a deprivation of the right to counsel, in contravention of *Perry*," instead, this requires a defendant "to show that there was a deprivation of counsel in the first place." The State contends that this is the approach "adopted by every federal appellate court to directly address the issue, including the Third, Fourth, and Eleventh Circuits[,]" as well as by seven State appellate courts, and rejected only by the District of Columbia Court of Appeals. The State asserts that, under this standard, Mr. Clark did not show that he was actually deprived of consultation with his trial counsel, and, therefore, Mr. Clark was not entitled to a presumption of prejudice.

The State argues that the cases cited by Mr. Clark, with a few exceptions, do not speak to the "actual deprivation" standard but instead to the general principle that a Geders violation does not require a showing of prejudice. The State asserts that following the approach of these courts, and not requiring an objection, "would incentivize defendants and their counsel *not* to object to directives that are improper under *Geders*." (Emphasis in original). The State argues that the actual deprivation standard deployed by the Appellate Court in this case "does not treat a non-objection by counsel as a waiver of the right to attorney-client consultation" because "the defendant can show that he would have consulted with counsel but for the trial court's no-communication directive[.]" According to the State, Mr. Clark's contention that this standard would result in the violation of a defendant's right to confer privately with counsel is overblown, because normally an objection is all that is needed to show there was actual deprivation and, in cases lacking an

- 16 -

objection, the defendant or counsel can testify to the deprivation. The State contends that, in the absence of the presumption of prejudice, which it argues does not apply here, Mr. Clark failed to show prejudice under Strickland, and his postconviction claim therefore fails.

The State asserts that this Court's decision in Newton forecloses the possibility that Mr. Clark was prejudiced by his trial counsel's failure to preserve the issue for appeal. This is because, under Newton, the State argues, "it must be presumed that, upon being alerted to its error, the trial court would have recognized and corrected it[,]" resulting in no issue on direct appeal. The State asserts that such an approach is appropriate because "any other rule would transform the *Strickland* prejudice inquiry into a loophole in the appellate preservation requirement and the plain-error review standard[.]"

## Standard of Review

"In reviewing a trial court's ruling on a petition for postconviction relief, an appellate court reviews for clear error the trial court's findings of fact, and reviews without deference the trial court's conclusions of law, including a conclusion as to whether the petitioner received ineffective assistance of counsel." Ramirez, 464 Md. at 560, 212 A.3d at 380 (citation omitted).

## The Right to Effective Assistance of Counsel

As a bedrock principle, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. See U.S. Const. amend. VI. Under Supreme Court of the United States precedent, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of

the accused to receive a fair trial." Cronic, 466 U.S. at 658. In Strickland, a federal habeas corpus case and the seminal case on the standard for attorney performance in a criminal trial, the Supreme Court reiterated "that the right to counsel is the right to the effective assistance of counsel." Strickland, 466 U.S. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (internal quotation marks omitted)). The Supreme Court stated that the "Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense[,]" and that counsel "can also deprive a defendant of the right to effective assistance, simply by failing to render 'adequate legal assistance[.]'" Id. (citations omitted). The Supreme Court explained that "[i]n certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." Id. at 692 (citing Cronic, 466 U.S. at 659 & n.25). The Supreme Court stated that "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." Id. (citing Cronic, 466 U.S. at 658).

In addition, the Supreme Court held that, "though more limited," a presumption of prejudice is warranted when counsel is burdened by an actual conflict of interest. Id. "In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." Id. The Supreme Court explained that, where an ineffective assistance of counsel claim is based on an alleged conflict of interest, "the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims" based on an actual or constructive denial of the assistance of counsel and certain types of State interference. Id.

- 18 -

Rather, where an alleged conflict of interest is concerned, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected [the defendant's] lawyer's performance.'" Id. (citation omitted).

With respect to an actual or constructive denial of the assistance of counsel and certain kinds of State interference, no affirmative showing or demonstration by the defendant is required; rather, there is a *per se* rule of prejudice. See id. Under Strickland, the actual or constructive denial of the assistance of counsel and the government's interference with assistance of counsel in certain instances are not treated differently— instead, they are both entitled to a "per se" presumption of prejudice without a showing by a defendant. Id.

### Geders and Perry

Prior to Strickland, in Geders, 425 U.S. at 91, the Supreme Court considered on direct appeal whether a trial court's order directing petitioner not to consult with his attorney during an overnight court recess, called between petitioner's direct-examination and cross-examination, violated petitioner's Sixth Amendment right to the assistance of counsel. The Supreme Court held that the trial court's "order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." Id. Even though defense counsel had objected to the order and indicated that a defendant and counsel should not be precluded from speaking during an overnight recess, see id. at 82, the Supreme Court reversed the Fifth Circuit's

- 19 -

decision holding "that petitioner's failure to claim any prejudice resulting from his inability to consult with counsel during one evening of the trial was fatal to his appeal." Id. at 86, 92; see also Perry, 488 U.S. at 279. The Supreme Court concluded that such an order deprives the defendant of the "guiding hand of counsel" at a critical point in the proceeding. Geders, 425 U.S. at 89 (quoting Powell v. Alabama, 287 U.S. 45, 69 (1932)).

The Supreme Court's holding in Geders teaches that it is the length and scope of the no-communication order, not the defendant's request or demonstrated desire for counsel, that determines whether there has been a violation of the defendant's Sixth Amendment right to counsel. In Geders, id. at 88, the Supreme Court explained that overnight recesses are important opportunities for a defendant and counsel to converse, share information, and make decisions, which is critical to the right to counsel and the right to be heard "because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." The Court characterized the no-communication order as "a sustained barrier to communication between a defendant and his lawyer[.]" Id. at 91. The Court concluded that "[t]he challenged order prevented petitioner from consulting his attorney during a 17-hour overnight recess, when an accused would normally confer with counsel." Id.

In Geders, id. at 92, the Supreme Court reversed the judgment of the Fifth Circuit, which had denied the claim of a constitutional violation in the case because it could "discern no actual harm . . . and [was] convinced that there was none[.]" United States v. Fink, 502 F.2d 1, 9, (5th Cir. 1974), rev'd sub nom. Geders, 425 U.S. 80 (quoting United States v. Leighton, 386 F.2d 822, 823 (2d Cir. 1967)) (ellipsis in original) (internal

- 20 -

quotation marks omitted). The Fifth Circuit based its conclusion on the reasoning of the Second Circuit, which had rejected the claim that a no-communication order was a "violation of [a defendant's] right to counsel" because "[a]t no time during, before, or after the recess,[5] did either [the defendant] or his attorney indicate that they did in fact have something to discuss which might have affected [the defendant]'s testimony or course of action." Fink, 502 F.2d at 9 (quoting Leighton, 386 F.2d at 823). In Geders, 425 U.S. at 86, 92, in reversing the Fifth Circuit, the Supreme Court characterized the Fifth Circuit as having held in Fink, in reliance on Leighton, "that petitioner's failure to claim any prejudice resulting from his inability to consult with counsel during one evening of the trial was fatal to his appeal."

The Supreme Court referenced the conclusions of other courts "that an order preventing a defendant from consulting his attorney during an overnight recess infringes upon this substantial right": United States v. Venuto, 182 F.2d 519 (3d Cir. 1950); People v. Noble, 248 N.E.2d 96 (Ill. 1969); and Commonwealth v. Werner, 214 A.2d 276 (Pa. Super. Ct. 1965). Geders, 425 U.S. at 89. Nothing in the Third Circuit's Venuto opinion indicates whether the defendant and counsel expressed a desire to consult overnight, whereas the Supreme Court of Illinois's decision in Noble, 248 N.E.2d at 99, related that

---

[5]The recess at issue in Leighton was an "eighty-five minute luncheon recess" between the defendant's direct- and cross-examination, Leighton, 386 F.2d at 823, which could place the no-communication order within the bounds of the Constitution per Perry, 488 U.S. at 280. In Geders, the Supreme Court distinguished Leighton based on the difference in the nature of the recess, making it "a matter we emphasize is not before us in this case." Geders, 425 U.S. at 89 n.2 (citations omitted). The concurring opinion saw no reason to exclude shorter recesses from the rule set forth in the majority opinion. See Geders, 425 U.S. at 92 (Marshall, J., concurring).

- 21 -

defense counsel "needed to discuss certain matters with defendant before the following day."[6]  In Werner, 214 A.2d at 277, the Pennsylvania appellate court held unconstitutional an overnight no-communication order, requiring reversal even though the order limited only consultation regarding the defendant's testimony and defense counsel sought only to be able to ask defendant "if there are any other witnesses he wants me to call" and otherwise consented to the order.  In all of these direct appeal cases, the courts rejected the argument that the defendant had to show prejudice from the denial of access to counsel.  See Venuto, 182 F.2d at 522; Noble, 248 N.E.2d at 100; Werner, 214 A.2d at 278.

After Geders, in Perry, 488 U.S. at 276-77, the Supreme Court expressly addressed, in a habeas corpus case, the question of whether a demonstration of prejudice is necessary to establish a violation of the Sixth Amendment right to counsel and set aside a conviction based on a trial court's no-communication order, or whether prejudice is presumed.  The petitioner sought a federal writ of habeas corpus after the Supreme Court of South Carolina upheld his conviction despite the trial judge's instruction that he not speak to his attorney during a brief unexpected 15-minute break at the end of his direct-examination.[7]  See Perry, 488 U.S. at 274-75.  The federal district court held that the defendant had a right to counsel during the brief recess and that "he need not demonstrate prejudice from the denial of that

---

[6]In later cases, both the Third Circuit and the Supreme Court of Illinois would adopt the "actual deprivation" rule.  See Bailey, 657 F.2d at 23-24; People v. Brooks, 505 N.E.2d 336, 340-41 (Ill. 1987).

[7]According to Perry, 488 U.S. at 274, the State trial court declared a 15-minute recess and ordered that the defendant not be allowed to talk with anyone during the break, including his lawyer.  After the recess, the attorney requested a mistrial due to the no-communication order, which the State trial court denied.  See id.

right in order to have his conviction set aside." Id. at 276 (citations omitted).

The Fourth Circuit, sitting *en banc*, reversed, relying on Cronic and Strickland, and held "that trial errors of this kind do not pose such a fundamental threat to a fair trial that reversal of a conviction should be automatic." Perry, 488 U.S. at 276. Using a prejudice analysis, the Fourth Circuit concluded that the evidence against the defendant was overwhelming and "that there was no basis for believing that his performance on cross-examination would have been different had he been given an opportunity to confer with his lawyer during the brief recess." Id.

In Perry, id. at 280, the Supreme Court of the United States held that a defendant does not have "a constitutional right to confer with his attorney during [a] 15-minute break in his testimony[.]" Significantly, though, as part of its rejection of the Fourth Circuit's reasoning, the Supreme Court held "that a showing of prejudice is not an essential component of a violation of the rule announced in *Geders*." Perry, 488 U.S. at 278-80. The Supreme Court stated that, contrary to the Fourth Circuit's conclusion, Strickland had not modified the Geders rule to require a showing of prejudice to the defendant, but rather had made clear that "'[a]ctual or constructive denial of the assistance of counsel altogether' is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." Perry, 488 U.S. at 280 (quoting Strickland, 466 U.S. at 692) (alteration in original) (citations omitted). The Supreme Court did not accept the Fourth Circuit's rationale that "trial errors of this kind do not pose such a fundamental threat to a fair trial that reversal of a conviction should be automatic" and that the trial outcome would have been no different without the

error.  Id. at 280, 276.

Nonetheless, the Supreme Court affirmed the Fourth Circuit's decision, explaining that a judge's instruction that a defendant may not "confer with his attorney during [a] 15-minute break in his testimony" is not a constitutional violation.  Perry, 488 U.S. at 280, 285.  This is because a defendant does not have a "constitutional right to discuss [] testimony while it is in process" and would be unlikely to discuss anything other than the testimony during such a brief recess.  Id. at 283-84.  A bar on attorney-client communication during such a short break does not implicate

> the normal consultation between attorney and client that occurs during an overnight recess [] encompass[ing] matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain.

Id. at 284.  The difference between Geders and Perry, the Supreme Court explained, was that in the context of a long recess, "the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters" controls, whereas in a short recess nothing other than the testimony itself would likely be discussed.  Perry, 488 U.S. at 284.

### The Presumption of Prejudice

The actual denial of the assistance of counsel is one of the limited distinct circumstances that the Supreme Court of the United States and this Court have consistently recognized as resulting in a presumption of prejudice under Strickland in determining whether trial counsel has rendered ineffective assistance of counsel in postconviction cases. In accord with Supreme Court of the United States precedent, this Court has stated that,

> in assessing a petitioner's allegation of ineffective assistance of counsel, a

court should presume that trial counsel's performance prejudiced the petitioner only if: (1) the petitioner was actually denied the assistance of counsel; (2) the petitioner was constructively denied the assistance of counsel; or (3) the petitioner's counsel had an actual conflict of interest.

Ramirez, 464 Md. at 572-73, 212 A.3d at 387.

In Ramirez, id. at 539-41, 212 A.3d at 368, this Court considered an ineffective assistance claim based on trial counsel's failure to strike a potentially biased juror who during *voir dire* stated that his past experience as a crime victim would likely affect his ability to render a fair and impartial verdict. We determined that the defendant proved deficient performance based on trial counsel mistakenly moving to strike for cause another juror rather than the one who had expressed possible bias. See id. at 568-69, 212 A.3d at 385. Despite trial counsel's deficient performance, we concluded that the petitioner needed to prove prejudice, because trial counsel's failure to move to strike a juror was not one of the narrow circumstances in which prejudice is presumed. See id. at 573, 212 A.3d at 388. We determined that the petitioner's allegation of structural error, even if valid, did not relieve him "of the obligation to prove prejudice[,]" and that he failed to do so. Id. at 573, 577, 212 A.3d at 388, 390.

In Ramirez, id. at 539, 574, 212 A.3d at 367, 388, we stated that the actual denial of the assistance of counsel is one of a select few "circumstances under which 'a presumption of prejudice is appropriate[,]' which obviates the need for 'inquiry into the [] conduct of the trial.'" (Quoting Cronic, 466 U.S. at 660) (alterations in original). In accord with Supreme Court of the United States precedent, in *dicta*, we described the actual denial of the assistance of counsel as occurring "where 'counsel was either totally absent, or

prevented from assisting the [petitioner] during a critical stage of the proceeding.'" Id. at 574, 212 A.3d at 388 (quoting Cronic, 466 U.S. at 659 n.25) (alteration in original).[8] We did not hold that a defendant is required to prove that the defendant wanted to communicate with counsel, or prove anything at all, to demonstrate that counsel was prevented from rendering assistance during a critical stage of the proceeding.[9] See Ramirez, 464 Md. at 572-73, 212 A.3d at 387. Rather, we reiterated the holding of long-standing case law of the Supreme Court of the United States that the actual denial of the assistance of counsel is one of three limited circumstances in which there is no need for an inquiry as to prejudice. See id. at 572-73, 212 A.3d at 387.

The Supreme Court of the United States has stated that such "circumstances [] are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Cronic, 466 U.S. at 658 (footnote omitted). Put differently, "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." Mickens v. Taylor, 535 U.S. 162, 166 (2002) (citations omitted). "Violations of the rule against

---

[8]Courts have described the second form of the denial of the assistance of counsel, constructive denial, as when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" or when, despite counsel's availability "to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate[.]" Cronic, 466 U.S. at 659-60.

[9]In Ramirez, 464 Md. at 574, 212 A.3d at 388, the description of the actual denial of the assistance of counsel appeared in a paragraph of the opinion describing Supreme Court case law setting forth the three circumstances under which the presumption of prejudice applies. With this statement, this Court did no more than quote existing Supreme Court case law. The resolution of the issue before the Court—whether prejudice should be presumed for trial counsel's deficient performance during *voir dire*—did not turn on the description of the actual denial of the assistance of counsel quoted from Supreme Court case law.

flatly prohibiting consultation between a criminal defendant and his lawyer during a substantial recess are treated as complete denials of counsel (even though they are of limited duration), and so require reversal even if no prejudice is shown." United States v. Santos, 201 F.3d 953, 966 (7th Cir. 2000) (citations omitted).

In Ramirez, 464 Md. at 561, 212 A.3d at 380, this Court made clear that, as to a claim of ineffective assistance that does not fall within one of the three presumed prejudice exceptions, the petitioner has the burden to establish "that the deficient performance prejudiced the defense." (Quoting Strickland, 466 U.S. at 687). Prejudice in this context means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" which we have clarified means a "substantial or significant possibility that the verdict . . . would have been affected." Id. at 561, 212 A.3d at 380-81 (quoting Strickland, 466 U.S. at 694; Syed, 463 Md. at 86-87, 204 A.3d at 154) (ellipsis in original) (internal quotation marks omitted).

This Court has not permitted an encroachment on the three circumstances under which prejudice is presumed post-conviction. We have held that the requirement to show prejudice may apply where a postconviction petitioner alleges structural errors, but only so long as the error is not within one of the three presumption of prejudice exceptions. See id. at 575, 212 A.3d at 389. For instance, no presumption of prejudice applies when a postconviction petitioner challenges trial counsel's failure to invoke the "automatic right to remove the case to another county[,]" oppose "the presence of an alternate juror during deliberations[,]" or object to a "public-trial right violation." Id. at 565-66, 212 A.3d at 382-83 (cleaned up). This is so because, although "[t]he purpose of the structural error doctrine

is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial[,]" in some instances, "the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim premised on the failure to object to that error." Weaver, 582 U.S. at 294-95. Therefore, aside from an error falling within the three presumption of prejudice categories, a structural error that may warrant automatic reversal on direct appeal can be held to a higher standard and require a showing of prejudice when it is alleged in postconviction proceedings based on ineffective assistance of counsel. See id. at 302. As we explained in Ramirez, 464 Md. at 577, 212 A.2d at 390, this distinction is not accurate for cases involving "any of the circumstances under which the presumption of prejudice applies[,]" such as "[a]ctual or constructive denial of the assistance of counsel[.]" (Quoting Strickland, 466 U.S. at 692) (first alteration in original).

### "Actual Denial" vs. "Actual Deprivation"

In contrast to this Court's longstanding case law concerning the applicability of the presumption of prejudice where a defendant was actually or constructively denied the assistance of counsel, some courts have applied a standard indicating that the presumption of prejudice is available with respect to an unobjected-to no-communication order only for those petitioners who can prove that they desired to speak with their counsel but were prevented from doing so by the trial court's no-communication order. See, e.g., Bailey, 657 F.2d at 23-24 (habeas corpus case involving unobjected-to order); Nelson, 884 F.3d at 1109 (direct appeal involving unobjected-to order); People v. Brooks, 505 N.E.2d 336, 340-41 (Ill. 1987), abrogated on other grounds by People v. R.D., 613 N.E.2d 706 (Ill.

- 28 -

1993) (direct appeal involving unobjected-to order).[10]  Consistent with this Court's case law, however, other courts have treated a lengthy or overnight unobjected-to no-communication order itself as a denial of the assistance of counsel, without requiring a showing of an intent by the defendant or counsel to speak with each other but for the order. See, e.g., United States v. Torres, 997 F.3d 624, 627 (5th Cir. 2021) (direct appeal involving unobjected-to order); Martin, 991 A.2d at 795 (same); see also Mastracchio v. Houle, 416 A.2d 116, 117, 122 (R.I. 1980) (postconviction case involving objected-to order where defense counsel moved to be allowed to speak with defendant during weekend-long recess but advised that he did not at the time anticipate needing to do so).  The latter approach, which is undeniably consistent with the Sixth Amendment right to counsel, the Maryland Declaration of Rights, and case law of the Supreme Court of the United States and this Court, is the approach that, absent an exception to the principle of *stare decisis*, we must follow.

Specifically, various courts have concluded that a lengthy no-communication instruction itself deprives the defendant of the assistance of counsel. See Mastracchio, 416 A.2d at 122 (holding in a postconviction context "that applicant was deprived of his Sixth Amendment right to counsel during his trial by virtue of the order that he not consult with counsel during the weekend recess").  This conclusion results from the Supreme Court's holding in Geders, in that it "reversed without pausing to inquire as to prejudice," and was

---

[10]Bailey, a habeas corpus case, appears to be the genesis of this approach.  See, e.g., Brooks, 505 N.E.2d at 340-41; Crutchfield v. Wainwright, 803 F.2d 1103, 1110 (11th Cir. 1986) (en banc), abrogated on other grounds by Perry, 488 U.S. 272; Stubbs v. Bordenkircher, 689 F.2d 1205, 1207 (4th Cir. 1982).

"persuaded that foreclosing consultation with counsel inevitably impairs the effective assistance of counsel when the prohibition extends over as long a period as an overnight recess." United States v. DiLapi, 651 F.2d 140, 148 (2d Cir. 1981).

The difference in the two approaches is not one of semantics. Under an "actual-deprivation" approach, as "a condition precedent" to a Sixth Amendment violation, there must be "a demonstration, from the trial record," that the defendant desired to confer with counsel or that counsel desired to confer with the defendant but was "precluded from doing so by the [trial] court." Nelson, 884 F.3d at 1109. Courts following the above approach characterize this demonstration as a distinct question that must be answered separate from any prejudice to the defendant from a no-communication order. See Bailey, 657 F.2d at 24. An objection to the no-communication order is considered a way to show an actual deprivation, but a defendant could also rely on other evidence to show it. See Nelson, 884 F.3d at 1109-10.

To be sure, some dictionary definitions of "denial" and "deprivation" may be similar or even synonymous.[11] But case law has not treated "actual denial" and "actual

---

[11]The dictionary definitions of "denial" include a "refusal to satisfy a request or desire[,]" or "refusal to grant or allow something[.]" *Denial*, Merriam-Webster (2023), https://www.merriam-webster.com/dictionary/denial [https://perma.cc/DA94-8NXA]; see also *Denial*, Oxford English Dictionary (2023), https://www.oed.com/search/dictionary/ ?scope=Entries&q=denial [https://perma.cc/B6YQ-28XT] ("The act of saying 'no' to a request or to a person who makes a request; refusal of anything asked for or desired."). The relevant definitions of "deprivation" are "the state of being kept from [] enjoying[] or using something" or "an act or instance of withholding or taking something away from someone or something[.]" *Deprivation*, Merriam-Webster (2023), https://www.merriam-webster.com/dictionary/deprivation [https://perma.cc/PA4R-3R39]; see also *Deprivation*, The Britannica Dictionary (2023), https://www.britannica.com/dictionary/deprivation

deprivation" as the same. Courts using the actual deprivation standard have required a substantive showing or demonstration of a defendant's desire or need to speak with counsel as a condition precedent to finding prejudice. Those courts have sometimes described this requirement as an issue of deprivation rather than a denial of the assistance of counsel. See, e.g., Crutchfield v. Wainwright, 803 F.2d 1103, 1109 (11th Cir. 1986) (en banc), abrogated on other grounds by Perry, 488 U.S. 272; Stubbs, 689 F.2d at 1207. The actual denial standard as used by this Court and the Supreme Court in Geders, Strickland, and Perry does not require that the defendant make a demonstration or showing of a desire or need to consult with counsel but rather is based on the scope and duration of the preclusion of access to counsel. So, although the dictionary definitions of the words denial and deprivation may be similar or the same, case law has treated the terms denial and deprivation differently.

Like the Supreme Court of the United States, this Court has never held in any context that the right to counsel in a criminal trial depends on a request by the defendant. We have consistently stated in our postconviction case law that the actual denial and constructive denial of the assistance of counsel are two of three narrow grounds under which prejudice is presumed, and we have never required a demonstration or showing by a petitioner as a condition precedent to the presumption of prejudice due to an actual or constructive denial of the assistance of counsel. See Ramirez, 464 Md. at 572-73, 212 A.3d at 387.

---

[https://perma.cc/DQE9-KG2N] ("[T]he state of not having something that people need[,] the state of being deprived of something[.]").

In fact, the Supreme Court of the United States has stated that, "[t]o preserve the protection of the Bill of Rights for hard-pressed defendants, [] every reasonable presumption against the waiver of fundamental rights[ is indulged]." Glasser v. United States, 315 U.S. 60, 70 (1942). A waiver of the right to counsel is not valid unless it is "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). The Supreme Court has explained that the burden is on the State to prove such intentional relinquishment, as has been "reiterated in many cases[,]" and "the right to counsel does not depend upon a request by the defendant." Brewer v. Williams, 430 U.S. 387, 404 (1977). Similarly, this Court has required a knowing and intelligent waiver even when a defendant explicitly consents to defense counsel's absence during a critical stage of trial. See State v. Wischhusen, 342 Md. 530, 540, 677 A.2d 595, 600 (1996).

### Weaver: Structural Error and Ineffective Assistance of Counsel

In Weaver, 582 U.S. at 300-01, the Supreme Court held that a violation of the constitutional right to a public trial, which on direct appeal would result in automatic reversal without inquiry into prejudice, is not entitled to a presumption of prejudice when it is raised in an ineffective assistance of counsel challenge. The Court's decision necessitated applying two "intertwined" doctrines, structural error and ineffective assistance of counsel, because "the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim premised on the failure to object to that error." Id. at 294.

The Supreme Court described structural errors as those that "should not be deemed

harmless beyond a reasonable doubt" in order "to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." Id. at 294-95 (citation omitted). The Court outlined "three broad rationales" that lead to an error being structural: the right at issue serves an interest other than protecting against erroneous conviction; "the effects of the error are simply too hard to measure"; and "the error always results in fundamental unfairness." Id. at 295-96. The Court determined that, "while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." See id. at 299. The Court discussed the requirement that an ineffective assistance of counsel challenge must normally meet the Strickland requirements of deficient performance and prejudice, and that "the ultimate inquiry must concentrate on 'the fundamental fairness of the proceeding.'" Weaver, 582 U.S. at 299-300 (citation omitted). The Court concluded that no presumption of prejudice applied because "not every public-trial violation will in fact lead to a fundamentally unfair trial"; nor would "the failure to object to a public-trial violation always deprive[] the defendant of a reasonable probability of a different outcome." Id. at 300-01. But the Court was careful to caution that its reasoning and holding did not call "into question the Court's precedents determining that certain errors are deemed structural and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process." Id. at 301 (citation omitted).

- 33 -

**Additional Maryland Case Law**

In addition to having done so in <u>Ramirez</u>, in other cases, this Court has described the narrow exceptions under which prejudice is presumed for <u>Strickland</u> purposes. In <u>Bowers v. State</u>, 320 Md. 416, 423, 425, 578 A.2d 734, 737-38 (1990), a postconviction case, we stated that, in <u>Perry</u>, the Supreme Court revisited <u>Strickland</u>, and that "situations in which prejudice is presumed" include "actual or constructive denial of counsel[.]" In <u>Redman v. State</u>, 363 Md. 298, 310-11, 768 A.2d 656, 663 (2001), also a postconviction case, this Court stated that "[t]he Supreme Court fashioned an exception to the *Strickland* prejudice prong" in <u>Cronic</u> with the presumption of prejudice applying where there is an actual or constructive denial of the assistance of counsel.

In <u>Walker v. State</u>, 391 Md. 233, 246-47, 892 A.2d 547, 554-55 (2006), another postconviction case, we described the presumption of prejudice as applying "where the accused was completely denied counsel . . . includ[ing] [] when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding[,]" where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[,]" and "where the accused faces circumstances in which it is not likely that any attorney could provide effective assistance." (Cleaned up). This Court has never held that, to establish that counsel was prevented from rendering assistance during a critical stage of the proceedings, a defendant is required to demonstrate that the defendant wanted to, or would have taken advantage of the opportunity to, speak with counsel. Instead, adhering to the approach taken by the Supreme Court of the United States, in postconviction and direct appeal cases, this Court has evaluated based on the facts of the case whether "counsel

was either totally absent, or prevented from assisting the accused[.]" Id. at 246-47, 892 A.2d at 555 (quoting Cronic, 466 U.S. at 659 n.25).

In Walker, id. at 244, 892 A.2d at 553, this Court upheld the denial of a petition for postconviction relief where the petitioner argued "that because his defense counsel did not participate at trial, he was denied effective assistance of counsel[.]" We disagreed with the petitioner's contention that, "because his trial counsel, although present in the courtroom, failed to subject the State's case against [him] to 'meaningful adversarial testing,'" a presumption of prejudice was warranted under Cronic. Walker, 391 Md. at 247, 892 A.2d at 555. The petitioner had left the State prior to trial but after counsel had been appointed to represent him, and the petitioner was tried *in absentia*, with defense counsel strenuously objecting to the proceeding as unconstitutional but otherwise generally not participating in the trial because he believed that the petitioner would not want him to do so. Id. at 238-41, 892 A.2d at 549-51.

We concluded that there was no presumption of prejudice because we read Cronic's exception as very narrow, meaning that defense counsel's "failure must be complete[,]" which it was not in petitioner's case. Walker, 391 Md. at 247, 892 A.2d at 555 (quoting Florida v. Nixon, 543 U.S. 175, 190 (2004)) (internal quotation marks omitted). We did not discuss any requirement that for the presumption of prejudice to apply the defendant must demonstrate that he actually desired or needed to confer with counsel or sought to have counsel ask questions or present arguments that counsel did not.

**Case Law of Courts in Other Jurisdictions**

In Bailey, 657 F.2d at 23-24, a case that predated Strickland, the Third Circuit

affirmed the denial of petitioner's habeas corpus claim based on a no-communication order, "based not on appellant's failure to prove the exact 'prejudice' caused by his inability to meet with counsel; rather, . . . based on his failure to demonstrate that he was actually 'deprived' of his right to consult with his attorney." Before an overnight recess during cross-examination of the petitioner, the trial court ordered him not to discuss his testimony with anybody, including his lawyer, but defense counsel did not object.[12] See Bailey, 657 F.2d at 22-23. The Third Circuit distinguished Geders and its own precedent, Venuto, 182 F.2d 519, because in those cases "there was an indication that absent the court's instruction, the defendant would have met with his counsel" and because "[t]he defendants' attorneys in both of these cases argued vigorously at the time of the imposition of the restriction that the trial court's instruction was improper and violated their clients' rights to consult with counsel." Bailey, 657 F.2d at 23-24 & n.4 (cleaned up). In contrast, in Bailey, the Third Circuit concluded that the petitioner "did not question or object to the court's instruction []or . . . present[] evidence to corroborate his assertion that he failed to do so because of the 'chilling' effect of the court's admonition." Id. at 24 (footnote omitted). On this last point, the Third Circuit discounted "an affidavit signed by the appellant almost five years after his conviction, and following the D.C. Court of Appeals decision in Jackson"[13] as

---

[12]The order came in the third week of a four-week trial. See Bailey, 657 F.2d at 22. In addition to the lack of objection to the order, the petitioner did not raise the issue on direct appeal. See id. at 23.

[13]In Jackson v. United States, 420 A.2d 1202, 1203, 1205 & n.8 (D.C. 1979) (en banc), the District of Columbia Court of Appeals reversed a conviction due to an order prohibiting the defendant from discussing his testimony or anything else with anyone over a lunch recess, despite counsel's failure to object, on the basis of plain error, and established

- 36 -

insufficient.  <u>Bailey</u>, 657 F.2d at 24 n.5.

The Third Circuit elaborated on the distinction between prejudice and the requirement of showing deprivation of consultation with counsel:

> "Prejudice" is the effect that restricting communication may have on a defendant's trial; that is, how, if at all, the defendant's trial strategy was affected by the deprivation of his right to consult with counsel.  We do not require a defendant to demonstrate the "prejudice" to his case because we do not want to infringe on the confidentiality of attorney-client communications.  *See Venuto*, 182 F.2d at 522.  However, a defendant need not disclose confidential information in order to prove that he has been "deprived" of an opportunity to meet with counsel.  To show a "deprivation" of his sixth amendment rights, a defendant must merely demonstrate that he wanted to meet with counsel, but was prevented from doing so by the court's instruction.
>
> The distinction between the "deprivation" of a right and the "prejudice" that may result therefrom is not a new one.  In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court held that the mere possibility that a defendant's attorney may have a conflict of interest is insufficient to demonstrate a deprivation of the defendant's sixth amendment rights.  Only an actual conflict of interest would establish such a violation. The Court carefully noted that its requirement that a defendant show an actual conflict does not constitute a requirement that the defendant demonstrate prejudice.  *Id.* at 349-50, 100 S.Ct. at 1718-1719.  A showing that one has been "deprived" of his right to effective counsel is a predicate to relief; a showing of "prejudice" is not.

<u>Bailey</u>, 657 F.2d at 24 (cleaned up).[14]

---

a *per se* rule that such orders are violations of the Sixth Amendment right to assistance of counsel.  The Court of Appeals concluded that an objection is not necessary to establish a violation because of the fundamental nature of the right to counsel and because defense counsel might be reluctant to object to a trial judge's order in front of the jury.  <u>See id.</u> at 1205 & n.7.

[14]In <u>Nelson</u>, 884 F.3d at 1104, the Eleventh Circuit considered a challenge to a conviction where, "just before an overnight recess that occurred while [the defendant] was on the stand, the court granted his lawyer's request to speak to him 'about matters other than his testimony.'"  On direct appeal, the defendant challenged the trial court's action as

In contrast, in <u>Martin</u>, 991 A.2d at 793, the District of Columbia Court of Appeals held, on direct appeal, that a trial judge's order that the defendant not speak with anyone over a weekend-long recess that interrupted his cross-examination constituted reversible error even though defense counsel did not object or otherwise address the order. The District of Columbia Court of Appeals observed that, in <u>Geders</u> and <u>Perry</u>, the Supreme Court held "that an order prohibiting a defendant from conferring with his counsel during an overnight (or other significant) interruption of his testimony is a denial of the defendant's Sixth Amendment right to counsel that requires reversal without any showing of prejudice." <u>Martin</u>, 991 A.2d at 793 (footnote omitted). The District of Columbia Court of Appeals noted that, under its precedent, "an unconstitutional prohibition on a testifying defendant's communication with his attorney during a recess is reversible error 'regardless of whether prejudice was demonstrated, and despite [the defendant's] failure to remonstrate against the court's order.'" <u>Martin</u>, 991 A.2d at 793-94 (alteration in original) (footnote omitted). The District of Columbia Court of Appeals concluded that, because the "deprivation of counsel's assistance is presumptively prejudicial" and violates a "transcendent" right under <u>Jackson</u>, the plain error standard applies. <u>Martin</u>, 991 A.2d at 794 (internal quotation marks omitted).

The District of Columbia Court of Appeals was unconvinced by the government's

---

error under <u>Geders</u>, asserting that he should have been allowed to speak about any topic with his lawyer. See <u>Nelson</u>, 884 F.3d at 1106. The Eleventh Circuit reasoned that, "because the trial record doesn't indicate that either [the defendant] or his lawyer had any intention or desire to discuss his testimony during the recess, [the defendant] can't show that he was actually deprived of his right to counsel" under Eleventh Circuit precedent. <u>Id.</u> at 1107.

argument that the defendant had to demonstrate "deprivation of his Sixth Amendment rights" with a showing "that he wanted to meet with counsel, but was prevented from doing so by the court's instruction." Id. at 795 (cleaned up). The District of Columbia Court of Appeals concluded that this framing was incorrect because, under Geders, Perry, and Jackson, the order itself was erroneous, so the government was effectively arguing that "the constitutional error was innocuous in the absence of evidence affirmatively showing that appellant actually wanted to confer with his attorney (or vice versa)." Martin, 991 A.2d at 795. That argument was foreclosed by Jackson, the District of Columbia Court of Appeals concluded, which "found plain error requiring reversal on a record devoid of evidence that appellant 'actually' wanted to exercise his Sixth Amendment rights." Martin, 991 A.2d at 795 (footnote omitted). In any case, the District of Columbia Court of Appeals determined that the government's reasoning was flawed:

> In essence, the government is arguing that appellant waived his Sixth Amendment right to the assistance of counsel by his failure to assert it—in other words, by his silence—when the trial judge erroneously undertook to curtail his exercise of the right. But "a valid waiver [of Sixth Amendment rights] cannot be presumed from a silent record." For a waiver of the right to counsel to be valid, it must be "an intentional relinquishment or abandonment of a known right or privilege." As the Supreme Court has emphasized, "the right to counsel does not depend upon a request by the defendant, and ... courts indulge in every reasonable presumption *against* waiver." Thus, the burden is on the government to establish a valid waiver in this case, not on appellant to disprove it.

> The government has not carried that burden in this case. The basic defect in its position is that the requisite knowledge and intent to support a finding of waiver cannot be inferred from the mere fact that appellant and defense counsel failed to object to the court's sequestration order. As noted above, sequestration orders are appropriate when directed at ordinary witnesses; for aught that appears in the record, appellant and counsel (like the judge and the prosecutor) mistakenly believed them to be appropriate

- 39 -

when directed at testifying defendants too. Ignorance of one's rights is not to be equated with a valid waiver.

Id. at 795-96 (alteration, ellipsis, and emphasis in original) (footnotes omitted).

And, in Mastracchio, 416 A.2d at 117, the Supreme Court of Rhode Island considered a defendant's postconviction challenge to being "forbidden by the trial justice to talk with his counsel concerning any matter relating to the case during a weekend recess in the trial." When the trial court "admonished applicant not to discuss the case with his attorney during the weekend recess[,]" defense counsel asked the court that he "be allowed * * * to talk to the Defendant not about any of his testimony[,]" but about "anything else[,]" although he did not "anticipate anything" at the time. Id. (ellipsis in original). Defense counsel stated that he wanted to be able to discuss anything "which may become relevant over the weekend." Id. The trial court denied the defendant's request and defense counsel noted an exception, but it "was neither briefed nor argued on direct review." Id. at 117-18. The Supreme Court of Rhode Island held that the defendant "was deprived of his Sixth Amendment right to counsel during his trial by virtue of the order that he not consult with counsel during the weekend recess" and had not waived the challenge. Id. at 122. The Supreme Court of Rhode Island declined to follow a Fourth Circuit opinion's reasoning "that the reliability of the factfinding process was but slightly impaired by forbidding consultation between lawyer and defendant during an overnight recess[,]" and anchored its holding in the Supreme Court of the United States's "high regard [] for the right to counsel and the presumed adverse effect of its denial upon the integrity of the factfinding

process[.]" Id.[15]

## Application of the Principles Above to this Case

### *The Sixth Amendment Right to Counsel*

After a careful review of the authorities above, we decline to adopt an "actual deprivation" standard which would require that, where a trial court issues a no-communication order between a defendant and trial counsel during trial and counsel fails to object, a postconviction petitioner must prove that the petitioner would have actually spoken with counsel in order to establish the actual denial of the assistance of counsel and therefore be entitled to a presumption of prejudice under Strickland. Such an approach is inconsistent with the Sixth Amendment to the United States Constitution, Articles 21 and 24 of the Maryland Declaration of Rights, the Supreme Court of the United States's holdings in Strickland, Geders, and Perry, and this Court's case law.

The "actual deprivation" standard conflicts with the right to counsel guaranteed by the Sixth Amendment. The right to counsel is automatic; a suggestion that it is available only to those defendants who prove they actually need the assistance of counsel countermands this fundamental constitutional guarantee. Yet, this is essentially what the

---

[15]In Torres, 997 F.3d at 627, the Fifth Circuit held that a trial court's prohibition on the defendant "from speaking with his counsel during a 13-hour overnight recess declared in the middle of his direct examination, right before the end of the trial the next day" fell "squarely within the *Geders* rule[.]" After the trial court instructed the defendant not to speak with anyone, "not even" counsel, about his testimony, defense counsel asked: "I'm not sure, did you just say I cannot talk to my client?", and the court responded in the affirmative, to which counsel responded simply: "Thank you." Torres, 997 F.3d at 626. As the case was on direct appeal and defense counsel had made no objection, the Fifth Circuit reviewed the order for plain error, and focused on whether it affected any "substantial rights." Id. at 628.

- 41 -

"actual deprivation" standard requires. It is a fundamental principle that a criminal defendant does not have to prove that the defendant will utilize a lawyer to benefit from the Sixth Amendment right at a critical stage of a criminal proceeding. This principle must not be disregarded in favor of a requirement that, in order to have the right to counsel during an overnight recess in the middle of a criminal trial, defendants must establish that they actually want or need to speak with counsel during the recess. The "actual deprivation" standard abrogates what should be an unfettered right to counsel at a critical stage of a criminal proceeding, *i.e.*, trial. Although courts in other jurisdictions may have adopted this standard, this Court is not bound by their decision to adopt a rule that is inconsistent with the underpinnings of the Sixth Amendment and conflicts with our case law and the case law of the Supreme Court of the United States.

In this case, a violation of the Sixth Amendment right to counsel resulted from trial counsel's failure to object to the trial court's order preventing Mr. Clark and trial counsel from communicating about the case during an overnight recess, which necessarily interfered with "the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess," Perry, 488 U.S. at 284 (citing Geders, 425 U.S. at 88), and "prevented [counsel] from assisting the [defendant] during a critical stage of the proceeding[,]" Cronic, 466 U.S. at 659 n.25 (citations omitted). The Sixth Amendment's guarantee of the defendant's right to consult with counsel, like the right to counsel of choice, is "a particular guarantee of fairness" that must be provided by the courts. United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006). Barring all communication between a defendant and trial counsel about the case

- 42 -

for such a long period of time during a criminal trial eviscerates that right, and a defendant should not be required to prove or show how the right would have been exercised to demonstrate prejudice.

The right to counsel at critical stages of criminal proceedings is an absolute and unqualified right. This Court has even recognized that it requires government-provided counsel in the context of certain civil cases and when "an indigent defendant [appears] at an initial hearing before a District Court Commissioner." DeWolfe v. Richmond, 434 Md. 444, 464, 76 A.3d 1019, 1031 (2013) (footnote omitted). The actual deprivation standard restricts the right to counsel and is inconsistent with our case law. Indeed, an adoption of such a standard would abrogate, if not overrule, case law regarding the presumption of prejudice in cases of both "actual or constructive denial" of the assistance of counsel. Under the State's theory, application of the "actual deprivation" rule would also require petitioners in cases of the alleged constructive denial of the right to counsel to prove that they somehow sought, desired, or wanted their counsel to act or object in instances where counsel made no objections or arguments. See, e.g., Bowers, 320 Md. at 425, 578 A.2d at 738; Redman, 363 Md. at 310-11, 768 A.2d at 663.

That the Supreme Court and this Court have consistently spoken about the actual or constructive denial of the right to assistance of counsel as a presumptively prejudicial constitutional violation and never mentioned the words "actual deprivation" or required a defendant to demonstrate or prove anything as a condition precedent to the presumption applying is not an issue of mere semantics. Rather, the emphasis on the "denial" of the right reflects how a lengthy no-communication order itself prevents access to counsel

during a critical stage of a criminal proceeding. The focus is on the order's interference with Mr. Clark's right to counsel, by creating a "sustained barrier to communication[,]" Geders, 425 U.S. at 91, during a "critical stage" of the criminal proceeding and "prevent[ing counsel] from assisting the [defendant] during a critical stage of the proceeding," Cronic, 466 U.S. at 659 n.25, not on Mr. Clark's mindset at the time.

### *The Maryland Declaration of Rights*

Although under our case law interpreting the Sixth Amendment and the case law of the Supreme Court of the United States, the "actual deprivation" test is inappropriate, this conclusion is also warranted by our precedent establishing "that the due process right to counsel under Article 24 of the Declaration of Rights is broader than the right to counsel under Article 21 or the Sixth Amendment[,]" which "has been reaffirmed by this Court on numerous occasions." Richmond, 434 Md. at 460, 76 A.3d at 1028 (citations omitted). Moreover, in ineffective assistance of counsel cases, we have held that Article 21 provides protections to a criminal defendant's right to counsel above and beyond that determined by the Supreme Court as to the Sixth Amendment. See Perry v. State, 357 Md. 37, 85 & n.11, 741 A.2d 1162, 1188 & n.11 (1999). Article 21 sets forth multiple rights, including the right to counsel, while Article 24 protects the right to due process.

Article 24 provides:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

The right to counsel under Article 24 of the Maryland Declaration of Rights is

broader than the right to counsel under the Sixth Amendment. We have repeatedly recognized "that the protections provided under Article 24 are broader than those found in the United States Constitution" and "that the due process right to counsel under Article 24 [] is broader than the right to counsel under Article 21 or the Sixth Amendment[.]" DeWolfe, 434 Md. at 457 n.9, 460, 76 A.3d at 1026 n.9, 1028 (citations omitted). For instance, unlike the right to counsel under Article 21 and the Sixth Amendment, the right to counsel under Article 24 is not necessarily limited to critical stages of criminal proceedings. See id. at 459-60, 76 A.3d at 1028. In Richmond, id. at 456-57, 76 A.3d at 1026, we held that, under Article 24, an indigent defendant has a right to counsel at an initial appearance before a District Court Commissioner, and we expressly refrained from deciding whether there is such a right under Article 21 or the Sixth Amendment.

Article 21 provides:

That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

The right to counsel under Article 21, in ineffective assistance of counsel cases, has been found to be broader than the right to counsel under the Sixth Amendment.[16] One case

---

[16]In addition, recently, in Leidig v State, 475 Md. 181, 234-42, 256 A.3d 870, 901-05 (2021), after previously having held that the right to confrontation of witnesses under Article 21 is read *in pari materia* with the right to confrontation under the Sixth

demonstrating this is <u>Perry</u>, 357 Md. at 85, 741 A.2d at 1188, in which "we reject[ed] as a matter of independent Maryland law under Article 21 [] the notion that a defendant is never prejudiced under a *Strickland*-type analysis when reliable, though legally inadmissible, evidence is admitted against him or her." (Footnote omitted). We acknowledged that "[w]e have traditionally regarded the right to counsel guaranteed under Article 21 as being the same right provided by the Sixth Amendment, and, in construing Article 21, we have followed and applied the decisions of the Supreme Court interpreting the Federal provision." <u>Perry</u>, 357 Md. at 85 n.11, 741 A.2d at 1188 n.11 (citations omitted). Nonetheless, we adopted our own "construction of the independent Maryland Constitutional provision" and observed that, "[i]f the Supreme Court were to rule upon the issue, we obviously would be bound by its judgment when interpreting the Sixth Amendment, . . . but it would not serve, on its own, to alter the declaration made in [Perry] regarding Article 21." <u>Id.</u> at 85 n.11, 741 A.2d at 1188 n.11.

We reached a similar conclusion in <u>Taylor v. State</u>, 428 Md. 386, 410, 51 A.3d 655, 669 (2012), in which we held that a "presumption of prejudice applies when a defendant alleges ineffective assistance of counsel based on an attorney's personal conflict of interest due to the attorney's filing suit against the client before trial for unpaid legal fees arising from the very action where the attorney is representing the client[.]" We observed that different jurisdictions had reached different results in deciding whether a presumption of

Amendment, this Court held that Article 21 should be read differently with respect to the right to confront witnesses than the Supreme Court has interpreted the Sixth Amendment, and determined under Article 21 the basis for assessing whether a statement contained in a scientific report is testimonial.

prejudice can be based on a conflict of interest that does not involve representing multiple defendants at the same time. See id. at 410 n.13, 51 A.3d at 669 n.13. We concluded that the presumption was warranted in Taylor, regardless of whether the right to counsel was "rooted in the Sixth Amendment [] or Article 21[]." Id. at 410 n.13, 51 A.3d at 669 n.13. In other words, the right to counsel under Article 21 was broad enough for the presumption of prejudice to apply in Taylor, even if it did not under the Sixth Amendment.[17]

In this case, the State's "actual deprivation" approach would permit a trial court to deny a defendant the robust right to the effective assistance of counsel guaranteed by the Maryland Declaration of Rights—a right that this Court has held to provide broader protection than its federal equivalent—unless the defendant can prove that the defendant wanted to exercise or would have exercised the right. Just as we concluded in Taylor that a presumption of prejudice was warranted based on the right to counsel guaranteed by Article 21 of the Maryland Declaration of Rights, we now hold that where a defendant alleges ineffective assistance of counsel based on trial counsel's failure to object to a no-communication order preventing all communication between trial counsel and a defendant

---

[17]We are aware that, in other cases, we have stated "that Article 21 and the Sixth Amendment [] are to be read in *pari materia*" and that Article 21 "does not afford any right to counsel which is more expansive than that afforded by the Sixth Amendment." Grandison v. State, 425 Md. 34, 56, 64, 38 A.3d 352, 365, 370 (2012) (citations omitted). Nonetheless, we have never overruled Perry or Taylor, which remain good law and continue to show that the right to counsel under Article 21 is, in at least some respects, broader than the right to counsel under the Sixth Amendment. Indeed, in Richmond, 434 Md. at 458 n.11, 76 A.3d at 1027 n.11, we reaffirmed that, under Perry, 357 Md. at 85-87 & n.11, 741 A.2d at 1188-1189 & n.11, "the Right-to-Counsel Clause of Article 21 is an 'independent Maryland Constitutional provision,' and [] Supreme Court decisions under the Sixth Amendment would not be binding with regard to the Right-to-Counsel Clause of Article 21."

about the case during an overnight recess in a criminal trial, a presumption of prejudice is warranted under our own "construction of the independent Maryland Constitutional provision[s,]" Articles 21 and 24 of the Maryland Declaration of Rights. Perry, 357 Md. at 85 n.11, 741 A.2d at 1188 n.11. And a defendant need not make any showing or demonstration of a desire or need to speak with counsel, as a condition precedent, for prejudice to be presumed under Maryland's Constitutional provisions. In other words, a presumption of prejudice is warranted in such circumstances under Articles 21 and 24 of the Maryland Declaration of Rights, regardless of whether it may be warranted under the Sixth Amendment.

### Relevant Sixth Amendment Case Law

The most on-point governing precedent from the Supreme Court of the United States interpreting the Sixth Amendment right to counsel establishes two categories of no-communication orders and determines constitutionality based on whether a denial-of-access order fits into one category or the other. In Geders and Perry, the Supreme Court made no distinction between the application of the presumption of prejudice on direct appeal and in the postconviction context in finding a violation of the Sixth Amendment right to counsel based on a no-communication order. See Geders, 425 U.S. at 85-86, 88-92; Perry, 488 U.S. at 275-85. The Supreme Court held in Perry that its holding in Geders, that a lengthy overnight no-communication order constitutes an unconstitutional denial of the assistance of counsel and warrants a presumption of prejudice, is applicable to ineffective assistance of counsel cases and, specifically, that the holding was incorporated into Strickland. See Perry, 488 U.S. at 279-280 (describing how Strickland's citation of

- 48 -

Geders set apart cases of actual or constructive denial of the assistance of counsel "altogether" from other challenges under Strickland that require "determining whether the quality of a lawyer's performance itself has been constitutionally ineffective").

The circumstance that the actual denial of the assistance of effective counsel altogether may be due to either government interference or deficient performance by counsel was not discussed by the Supreme Court in Strickland as a distinguishing factor for conduct warranting a presumption of prejudice. Rather, in Strickland, 466 U.S. at 692, the Supreme Court concluded that a *per se* presumption of prejudice applies both to certain types of government interference and to the actual or constructive denial of the assistance of counsel. The limitation or difference in the application of the presumption of prejudice in Strickland was said to apply to cases of attorney conflict of interest for which the Supreme Court set forth a two-part test to be applied in determining whether a presumption of prejudice is warranted. See id. ("Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'").[18]

That said, in Geders, the Supreme Court classified as unconstitutional, without a

---

[18]In the case of a no-communication order, trial counsel's failure to object allows the order to take effect, as we assume the trial judge would have followed the law and corrected the error had counsel objected. See Newton, 455 Md. at 361, 168 A.3d at 12-13 (quoting Strickland, 466 U.S. at 694). So, defense counsel's deficient performance, if any, is inaction, i.e., a failure to object. In a postconviction matter where ineffective assistance of counsel is alleged based on trial counsel's failure to object to a no-communication order, our focus in determining whether a presumption of prejudice is warranted is on the constitutionality or unconstitutionality of the order, just as it would be on direct appeal and as was the Supreme Court of the United States' focus in Perry, a federal habeas corpus case. See Perry, 488 U.S. at 278-80, 284.

- 49 -

showing of prejudice, those no-communication orders that cover a significant range of time—certainly overnight or longer, perhaps slightly shorter. Although Geders involved a direct appeal, there is no difference in the approach. The logic behind this approach is that prohibitions on consultation for such periods of time are likely to infringe on the defendant's "right to unrestricted access to his lawyer for advice on a variety of trial-related matters[.]" Perry, 488 U.S. at 284. The same concern is not present in the second category of cases: no-communication orders governing brief recesses amidst the defendant's testimony, which Perry designates as constitutional because of their brevity, the likelihood that nothing other than testimony would be discussed, and the trial court's power to require continuity of testimony in these circumstances. The constitutional infirmity of Geders-like no-communication orders is "driven by the recognition that certain types of conduct are *in general* so antithetic to effective assistance . . . that a case-by-case analysis simply is not worth the cost of protracted litigation[,]" Scarpa v. Dubois, 38 F.3d 1, 12 (1st Cir. 1994), cert. denied, 513 U.S. 1129 (1995) (emphasis in original), whereas brief Perry-like orders do not implicate such an adverse effect on the effective assistance of counsel generally. The Supreme Court has endorsed a rule for overnight blanket bans on communication between defendant and counsel because they "pose such a fundamental threat to a fair trial that reversal of a conviction should be automatic." Perry, 488 U.S. at 276, 280.

In Geders, the Supreme Court implicitly rejected the kind of argument made by the State in this case. In Geders, 425 U.S. at 86, the Supreme Court reversed the Fifth Circuit's conclusion that no Sixth Amendment violation resulted from the no-communication order because, despite the objection, it could "discern no actual harm and [was] convinced that

there was none"—reasoning that the Fifth Circuit adopted from the Second Circuit's conclusion of no prejudice in another case because the defendant and counsel never "indicate[d] that they did in fact have something to discuss[.]"  See Fink, 502 F.2d at 9 (quoting Leighton, 386 F.2d at 823) (cleaned up).  By treating the question of whether there was a desire to exercise the right to consult with counsel as a question of prejudice and overturning the Fifth Circuit's decision in Geders, and affirmatively stating in Perry that prejudice is irrelevant to the actual denial of the assistance of counsel analysis in the context of lengthy no-communication orders, the Supreme Court held that such an order *itself* is violative of Sixth Amendment rights, without the need to inquire into the defendant's intent to consult with counsel.  This Court has agreed with that approach.  See Wooten-Bey v. State, 318 Md. 301, 307, 568 A.2d 16, 19 (1990) ("There is a distinction between the 'actual or constructive denial of the assistance of counsel altogether,' and whether the quality of the lawyer's performance itself has been constitutionally ineffective."  (Cleaned up)).  The Supreme Court and this Court have put significant weight on the fundamental nature of the right to counsel for a criminal defendant, and the Supreme Court has held that the right should not be impeded with lengthy, blanket no-communication orders.

The Supreme Court's incorporation of Geders into its analysis in Strickland, and its clarification of the above point in Perry, instruct that the presumption of prejudice for denial of the assistance of counsel does not vary based on whether it is challenged on direct appeal or in a deficient performance of counsel context.  To the contrary, we have stated that "[i]n *United States v. Cronic, . . .* decided the same day as *Strickland,* the Supreme Court established that certain deficient performances of counsel justified a per se

- 51 -

presumption of ineffectiveness under the Sixth Amendment." Walker, 391 Md. at 246, 892 A.2d at 554 (citation omitted). Indeed, in Strickland, 466 U.S. at 692-93, the Supreme Court directed that in cases of actual or constructive denial of the assistance of counsel, courts are to presume prejudice rather than assess whether defense counsel's errors "actually had an adverse effect on the defense." Yet, in this case, the State suggests that we do precisely the opposite by looking to whether Mr. Clark can prove that he actually would have spoken with counsel during the overnight recess. It is not clear how the "actual deprivation" test is different from the "actual[] . . . adverse effect" test that the Supreme Court has held does not apply to this type of no-communication order. Id.; Geders, 425 U.S. at 91.

Although neither case pertained to a claim involving the actual denial of the assistance of counsel, both Weaver and Ramirez guide our holding, because the cases reinforce the principle that the actual denial of the assistance of counsel is one of three limited exceptions in which a postconviction petitioner is not required to prove prejudice and that the actual denial of the assistance of counsel is a form of structural error that is treated the same on direct appeal and in postconviction proceedings. In Weaver, 582 U.S. at 290, the Supreme Court of the United States did not have occasion to address an issue involving the actual denial of the assistance of counsel; rather, the question before the Supreme Court involved alleged structural error in the form of a limit on a defendant's right to a public trial. The Supreme Court held that a violation of the constitutional right to a public trial, which would on direct appeal result in automatic reversal without inquiry into prejudice, is not entitled to a presumption of prejudice when it is raised in an

ineffective assistance of counsel challenge.  <u>See</u> <u>id.</u> at 290, 300-01.  In <u>Weaver</u>, <u>id.</u> at 301,

however, the Supreme Court made clear that "certain errors are deemed structural and

require reversal because they cause fundamental unfairness[.]"

Following the lead of the Supreme Court of the United States in <u>Weaver</u>, in <u>Ramirez</u>,

464 Md. at 575-77, 212 A.3d at 389-90, this Court refused to expand the three exceptions

to the requirement to prove prejudice under <u>Strickland</u> to include an additional category of

structural error—an attorney's deficient performance during *voir dire* in jury selection

process.  In <u>Ramirez</u>, 464 Md. at 572-73, 212 A.3d at 387, this Court made clear that there

are three limited exceptions to a defendant's need to demonstrate prejudice post-

conviction: (1) the actual denial of the assistance of counsel; (2) the constructive denial of

the assistance of counsel; and (3) an actual conflict of interest.  This Court made equally

clear that these three exceptions are treated no differently on postconviction as structural

error than on direct appeal—instead, these exceptions are entitled to a presumption of

prejudice in both contexts, while other types of structural error may not be.  <u>See</u> <u>id.</u> at 572-

73, 212 A.3d at 387; <u>see also</u> <u>id.</u> at 562, 212 A.3d at 381 (contrasting the general rule in

ineffective assistance of counsel cases that petitioner had the burden "to satisfy both the

performance prong and the prejudice prong" with the contexts in which "prejudice is

presumed," including "actual or constructive denial of the assistance of counsel" (cleaned

up)).

Our statement in <u>Ramirez</u>, quoting the Supreme Court's description of the actual

denial of the right to counsel, as occurring "where 'counsel was either totally absent, or

prevented from assisting the [petitioner] during a critical stage of the proceeding,'" <u>id.</u> at

574, 212 A.3d at 388 (quoting <u>Cronic</u>, 466 U.S. at 659 n.25), demonstrates that this Court has long been aware that the actual denial of the assistance of counsel is described as counsel either being totally absent or being prevented from assisting, and we have never interpreted anything about the word "prevent" to require that a postconviction petitioner demonstrate or prove that the petitioner would have spoken with counsel in order to be entitled to a presumption of prejudice. Rather, this Court has consistently stated that the denial of the assistance of counsel is a form of error that requires no showing of prejudice on direct appeal or post-conviction—no more, no less. <u>See</u> <u>Ramirez</u>, <u>id.</u> at 574-75, 212 A.3d at 388-89.

This makes sense because, at the risk of stating the obvious, dictionary definitions of the word "prevent" do not give rise to a requirement that there must be a demonstration or showing that something is desired or needed to happen in order for the word "prevent" to apply. The word prevent is defined in relevant part as "to keep from happening or existing" and "to deprive of power or hope of acting or succeeding[.]" *Prevent*, Merriam-Webster (2023), https://www.merriam-webster.com/dictionary/prevent [https://perma.cc/2L8F-5FKU]; <u>see also</u> *Prevent*, Oxford English Dictionary (2023), https://www.oed.com/search/dictionary/?scope=Entries&q=prevent [https://perma.cc/WCL9-SCTY]. (Prevent means "[t]o preclude the occurrence of (an anticipated event, state, etc.)[.]"). Nothing about the definition of the word prevent requires proof by a defendant that the defendant wanted to speak with counsel in order for the defendant to have been prevented from doing so. For example, consider how the word prevent is used in the following sentence: "The gate prevented access to the driveway." It is not necessary to prove that anyone wanted to

use the driveway to establish that the gate prevented or blocked access. In addition, the word prevent is not used as part of the description of the actual denial of the assistance of counsel where counsel is "totally absent[.]" <u>Cronic</u>, 466 U.S. at 659 n.25. The approach espoused by the State sets up the dichotomous situation that a defendant would be required to demonstrate that the defendant wanted or needed to speak with counsel where assistance was prevented, but no such demonstration would be required where counsel was totally absent. This could not have been what the Supreme Court of the United States intended when describing the complete denial of the assistance of counsel. See <u>id.</u> at 659 & n.25.

### *Constructive Denial of the Assistance of Counsel*

In the same vein, the "actual deprivation" test is at odds with precedent holding that prejudice is presumed from the constructive denial of the assistance of counsel, *i.e.*, counsel is present but "fails to subject the prosecution's case to meaningful adversarial testing" or the context makes the provision of effective assistance nigh impossible, regardless of counsel's skills. See <u>Cronic</u>, 466 U.S. at 659; <u>Ramirez</u>, 464 Md. at 574, 212 A.3d at 388. In such a circumstance, we do not require the defendant to demonstrate how the attorney's actions (or lack thereof) caused an actual deprivation of counsel based on a defendant's desire to speak with counsel or desire to have counsel behave differently. Instead, the focus is on the interference with counsel's assistance or defense counsel's inadequate actions. See <u>Perry</u>, 488 U.S. at 279; <u>Strickland</u>, 466 U.S. at 686. For example, we would not have expected the defendant in <u>Brooks v. Tennessee</u>, 406 U.S. 605 (1972) to demonstrate how the law requiring him to testify first for the defense or not at all deprived him of effective

- 55 -

assistance of counsel.[19]  Nor would the lack of an objection or contemporaneous demonstration by a defendant of the desire for different counsel mean the defendant was not constructively denied counsel when defense counsel's own conduct constituted constructive denial, such as defense counsel's absence "during cross-examination of [a] key government witness by [an] attorney for a codefendant[.]" Redman, 363 Md. at 312-13, 768 A.2d at 664 (cleaned up).

Plainly, constructive denial of the assistance of counsel hinges on the actions of counsel or the court, not on whether the defendant can prove a contemporaneous request or desire for different conduct.  This is because the conduct at issue threatens the fairness of the trial so significantly that an individualized prejudice analysis is inappropriate.  See Perry, 488 U.S. at 280.  In our controlling case law, the subjective perspective of the defendant has no bearing on the constructive denial of the assistance of counsel assessment. As a result, the adoption of an "actual deprivation" test would in effect overrule precedent on both actual denial and constructive denial of the assistance of counsel.  Applying the doctrine of *stare decisis,* nothing has changed in the law or facts to merit departure from precedent under which prejudice is presumed in cases of actual or constructive denial of the assistance of counsel, without a petitioner satisfying any conditions precedent.  There is no basis for overruling our past decisions.  Nor is there any basis in our precedent for a new approach.

---

[19]In Strickland, 466 U.S. at 686, the Supreme Court cited Brooks, along with Geders, as examples of governmental interference with the right to counsel that merits a presumption of prejudice.

*Actual Deprivation Test: Practical Concerns*

Contrary to this binding precedent, the actual deprivation standard renders the "presumed prejudice" rule of <u>Strickland</u>, with respect to the actual denial of the assistance of counsel, which has long been incorporated into our case law, meaningless. The idea that "actual deprivation" or prejudice may be shown in a postconviction proceeding by the existence of an objection to a no-communication order is illusory. When defense counsel objects to a trial court's no-communication order, and is overruled, the issue will almost always be resolved on direct appeal. Therefore, when an objection is raised, a no-communication order will not normally lead to any <u>Strickland</u> claim. It is only in the context of the lack of an objection by trial counsel that a petitioner would likely bring an ineffective assistance of counsel claim after a finding of lack of preservation on direct appeal, as in this case. And only in this circumstance would the presumption of prejudice have any significance. So, the State's suggestion that the primary and most effective way of showing "actual deprivation" would be an objection, would put in place the exact mechanism that would obviate the need for a <u>Strickland</u> ineffective assistance of counsel claim in the first place.

Instead, the unlucky defendant with counsel who failed to raise an objection to an obvious <u>Geders</u> violation would be required to prove "actual deprivation" by some unclear method, with various associated problems discussed below. The approach would effectively make obsolete the Supreme Court's application of the presumption of prejudice for those "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified[,]" such as the "obvious" circumstance of a

<u>Geders</u>-like "denial of the assistance of counsel" during a critical stage of trial. <u>Cronic</u>, 466 U.S. at 658-59 & n.25 (footnote omitted). Case law makes clear that the Supreme Court of the United States views orders interfering with counsel-defendant communication overnight as being of such constitutional magnitude as to justify a presumption of prejudice in ineffective assistance claims. An "actual deprivation" rule would make this exception to <u>Strickland</u>'s prejudice prong all but meaningless and run contrary to the importance the Supreme Court of the United States and this Court have placed on the right to counsel.

The "actual deprivation" test, in a case like this, where the trial court forbade Mr. Clark from any communication about the case with his counsel or anyone else overnight in the midst of trial, puts the defendant in a no-win situation. As observed by Mr. Clark, whether the defendant independently objects to the order is generally not a question asked at trial, because objecting is solely counsel's responsibility. But, when defense counsel does not object, due to the existence of the blanket no-communication order, the defendant cannot even ask counsel about the propriety of the order or let counsel know that the defendant wishes to speak with counsel. In the absence of an objection by counsel, a defendant who obeys the order cannot consult with counsel and thus cannot speak with counsel about the order, and counsel is unable to even advise the defendant how to potentially preserve the right to counsel (by, say, telling the court the next day that the defendant wanted to speak with counsel but could not), and likely would not even think to do so because of counsel's failure to notice the <u>Geders</u> violation.

In this instance, defense counsel, the one person whom the defendant relies on for a "guiding hand" in the trial, <u>Geders</u>, 425 U.S. at 89, has indicated that the order is legitimate

by not objecting, and the defendant cannot ask that person whether the situation might be otherwise. This distinguishes the situation from any other error to which defense counsel does not object and counsel and the defendant may discuss the circumstance. Simply put, the Sixth Amendment right to counsel should not be restricted in such a way during a criminal trial.

Critical to our conclusion is the nature of the no-communication order in this case: it was for overnight and applied to any discussion of the case with defense counsel or anyone else. The importance of the length is obvious in light of Perry, which distinguishes from this case the cases from other jurisdictions relied on by the State that concerned lunch or other brief recesses. See, e.g., Wallace, 851 So. 2d at 217; Brooks, 505 N.E.2d at 340. The all-encompassing, *i.e.*, blanket nature, of the no-communication order pertaining to any discussion whatsoever about the case also distinguishes it from cases cited by the State in which orders applied only to discussion of the defendants' testimony. See, e.g., Bailey, 657 F.2d at 22 (per curiam); Stubbs, 689 F.2d at 1206; Crutchfield, 803 F.2d at 1104. Although federal circuits are in unanimous agreement that an objected-to restriction on discussion of testimony is reversible error, a ban on discussion of testimony alone when not objected to may be treated differently. That is because, with a ban on discussion of testimony, a defendant could still ask counsel most questions, perhaps alerting counsel that the defendant has a question about testimony, perhaps persuading counsel to object after all. In the case of a blanket ban on discussion of the case, however, this could not happen.

As a practical matter, once an unobjected-to blanket no-communication order is issued, a defendant believes that communication with counsel about the case is not possible

and the order itself chills a defendant's desire or wish to speak with counsel. The actual deprivation test requires a defendant to prove in retrospect that the defendant would have done something, *i.e.*, spoken with counsel, that the court ordered the defendant not to do, and that the defendant may have, as a result, abandoned, given up, or not developed any aspiration to do. Further, a court's inquiry into whether the defendant wanted to exercise this fundamental right to counsel could easily veer into a consideration of whether the reason the defendant wished to converse with counsel was legitimate or important enough. For example, if Mr. Clark had asserted at the postconviction hearing that he wished to ask his attorney about a relatively insignificant issue, such as how long the cross-examination would take, a court would be invited to undertake the exact sort of weighing of harm that Geders and Perry do not allow.

This brings up the difficulty of determining what is sufficient to show an "actual deprivation" of Mr. Clark's right to counsel in this context. The State's proposed test for "actual deprivation" is unworkable. Certainly, aspects of the State's proposed rule are consistent with the approach of other jurisdictions: for instance, the State contends that an objection would satisfy the rule, but as discussed, if an objection were made, the matter likely would have been resolved on direct appeal and not be before a postconviction court on the issue of ineffective assistance of counsel. The State indicates that, in the absence of an objection, "there may be sufficient indication in the record on direct appeal to satisfy the actual-deprivation standard." (Citation omitted). However, beyond the trial record, the State contends that a defendant could demonstrate that a desire to meet with counsel existed through testimony at the postconviction hearing, and "the credibility of [such] an

assertion . . . would be enhanced by the disclosure of some degree of concrete detail about the topics of the desired communication." The suggestion regarding the need for testimony at a postconviction hearing is in effect a recognition of the unlikelihood that a defendant at trial would be in any position to express a desire on the record (during trial) to meet with counsel in the face of an unobjected-to order not to do so. In any event, it is not difficult to imagine the inevitable challenge to a defendant's credibility that such testimony would encounter during a postconviction hearing.

In addition, requiring such testimony would threaten attorney-client confidentiality and potentially give rise to tension between a defendant's Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination. Obviously, in an ineffective assistance of counsel proceeding, the petitioner waives attorney-privilege as to "communications, and the opinions based upon them [] relevant to the determination of the quality of counsel's performance." State v. Thomas, 325 Md. 160, 174, 599 A.2d 1171, 1177-78 (1992) (citations omitted). But the rationale for the waiver pertains to the need of the petitioner to show that counsel acted deficiently, and to allowing counsel to defend counsel's actions, whereas requiring a defendant to testify about matters that the defendant would have liked to talk to counsel about may exceed issues related to the waiver necessary to pursue the postconviction matter. For instance, suppose a defendant wished to discuss the possibility of a guilty plea. The defendant would face the difficult dilemma of choosing between disclosing at a postconviction hearing the incriminating desire to plead guilty in order to satisfy the actual deprivation of counsel test or remaining silent and not being able to satisfy the test. Ultimately, as noted by the dissent in the Appellate Court, the practical

result of the State's proposed "actual deprivation" approach would be to foreclose a petitioner's options, when no objection was made at trial, due to the difficulty of establishing after the fact a defendant's contemporaneous desire to meet with counsel. See Clark, 255 Md. App. at 359, 279 A.3d at 1139-40 (Nazarian, J., dissenting). The State's suggestion that a petitioner could satisfy its new test through testimony at a postconviction hearing does not make this new rule any less harsh. It remains one that a petitioner will unlikely ever be able to satisfy.

On the other hand, the acceptance of the defendant's trial counsel's testimony concerning the need for consultation with the defendant presents another problem: trial counsel is an interested party. The lawyer who served as trial counsel in an ineffective assistance of counsel case has an inherent conflict and potential bias to avoid reputational harm, or even civil liability, stemming from an ineffective assistance of counsel finding. And in any case, the lawyer's perspective would represent only one side of the story, with the presentation of the side of the person to whom the right to counsel belongs, *i.e.*, the defendant's perspective, being severely hampered by the impediments discussed above. In addition, trial counsel may not know whether the defendant desired to confer with counsel at the time of the no-communication order and would not know whether the defendant developed the desire to speak with counsel at some point during the duration of the order.

Consider the circumstances of this case. At the postconviction hearing, Mr. Garcia testified that "at the end of each day, I would always ask [Mr. Clark] if he had any questions or anything like that." The only reasonable inference to draw from this testimony is that the no-communication order prevented Mr. Garcia from doing what he had done at the end

- 62 -

of the prior days of trial—asking Mr. Clark if he had any questions. Yet, Mr. Garcia did not testify to this at the postconviction hearing. Rather, Mr. Garcia testified, among other things, that, "[a]t the time, I didn't think there was anything for us to talk about that evening." We can also infer that, at trial, at the end of the day, Mr. Clark understood full well why Mr. Garcia deviated from his normal practice—because, based on what the judge had just said, Mr. Garcia had no choice and could not to talk to him—which, of course, would have chilled any effort by Mr. Clark to initiate their typical end-of-day conversation himself.

So, in this case, we have an attorney who, as a result of a no-communication order, apparently deviated from his normal practice of asking the defendant at the end of the day if he had any questions, and who testified at the postconviction hearing, without knowing the defendant's mindset, that he did not think there was anything for them to talk about, and a defendant who, if he had any questions or wanted to talk with his attorney about the case, could not do so for a full overnight recess on the day before his cross-examination was to begin the next day. In this case, trial counsel had no way to know what questions or concerns Mr. Clark may have had going into the overnight recess before the final day of his testimony in his murder trial. Trial counsel's failure to object to the no-communication order, permitting the order to remain in effect, prevented consultation by Mr. Clark with counsel that would have revealed whether Mr. Clark wanted to speak with counsel about the case.

### *Incentivizing Trial Counsel to Not Object*

There is little reason to believe that permitting the Sixth Amendment right to counsel

to apply as it should, without requiring a showing of "actual deprivation," would incentivize defense counsel to not object to erroneous no-communication orders because, as the State contends, they "would be able to build an automatic do-over into the case." This view overlooks the countervailing incentive for the defense to raise an objection at trial to preserve an issue for direct appeal, so that a defendant is not potentially in prison for years awaiting the outcome of an even more uphill postconviction effort.  Additionally, the hypothetical proposed by the State that "a defendant in Clark's shoes could strategically acquiesce to the trial court's erroneous prohibition—a costless maneuver if the defense did not intend to consult during the recess anyway—and, if convicted, simply demand an automatic reversal and new trial" is no different from what would happen if defense counsel objected on the record and the trial court failed to cure the error, because on direct appeal an objected-to impermissible extended prohibition on consultation with counsel results in a new trial without a showing of prejudice.  In contrast, under the actual deprivation approach, it is actually the prosecutor who would have an incentive to stay silent if defense counsel fails to object to a no-communication order because of the higher bar for a defendant at the postconviction stage.

In reality, there is little cause to expect defense counsel to strategically fail to object to a lengthy no-communication order, when an objection, if sustained, would cure the error and, if not sustained, would more quickly and assuredly result in a new trial for the defendant on direct appeal.  Here, the lengthy overnight no-communication order in question is universally regarded as unconstitutional and normally requires reversal upon objection, so positing that defense counsel would knowingly refrain from objecting to such

an order borders on absurd.

### *Case Law from Other Jurisdictions, and <u>Bailey</u> is No Longer Good Law*

The State cites cases in support of adopting the "actual deprivation" rule that are not persuasive—most of them involve distinctive factual circumstances, such as particularly brief recesses and more limited prohibitions on communication. Take <u>Bailey</u>, which has influenced other courts' adoption of the "actual deprivation" rule. In <u>Bailey</u>, 657 F.2d at 22-23 & n.2 (per curiam), the ban on communication concerned only testimony, and the issue was not raised until nearly three years after trial, while here Mr. Clark raised the issue immediately in his direct appeal. As discussed above, the difference in the scope of the no-communication orders is significant; Mr. Clark, unlike the defendant in <u>Bailey</u>, was subject to a complete overnight ban on all communication regarding the case with counsel or anyone else the evening and night before the final day of testimony at trial. We simply cannot conclude that a blanket prohibition on communication about the case between defendant and counsel for the entirety of the last night before his testimony ended, and, indeed, the last night before all testimony at trial ended, does not inherently undermine the fairness of the proceeding.

Most of the decisions adopting the Third Circuit's reasoning in <u>Bailey</u> have applied the "actual deprivation" test to no-communications orders that were either much shorter than the one at issue in <u>Bailey</u> and here, or, like <u>Bailey</u>, restricted only discussion of testimony. In <u>Wallace</u>, 851 So.2d at 217 n.1, the court barred all consultation during a 75-minute lunch recess. Similarly, in <u>Brooks</u>, 505 N.E.2d at 340, the court prohibited all communication with counsel during a 60-minute lunch recess. In <u>Stubbs</u>, 689 F.2d at 1206,

the court barred discussion of a defendant's testimony during a lunch recess of unknown length, but likely lasting approximately 60 minutes, as the court referred to it as "the lunch hour." In Crutchfield, 803 F.2d at 1104-05, the length of the recess during which the defendant was told not to speak to counsel regarding his testimony was disputed, but, at most, it was a two-hour lunch break. Therefore, the no-communication orders in Wallace, Brooks, Stubbs, and Crutchfield were akin to the order in Perry, 488 U.S. at 280, which the Supreme Court held constitutional based on the brevity of the denial, not any inquiry into the defendant's interest in conferring with counsel. In Parker v. State, 469 S.E.2d 410, 413 (Ga. Ct. App. 1996), the court's order covered a significant amount of time, a weekend recess, but barred discussion of testimony only. As discussed, this distinction is significant, as the order did not pose the total barrier to communication that the Supreme Court decried in Geders, 425 U.S. at 91.

In addition, the Third Circuit's reasoning in Bailey fails to grapple with the well-established principle that a defendant does not waive the right to counsel with silence— waiver "must be knowing and intelligent." Walker, 391 Md. at 257, 892 A.2d at 561 (citations omitted); id. at 257, 892 A.2d at 561 ("Even if a defendant absconds prior to trial, the right to effective assistance of counsel is not waived automatically."); see also Wischhusen, 342 Md. at 540, 677 A.2d at 600 (holding that a waiver analysis is required even when a defendant expressly consents to defense counsel's absence during a critical stage of trial). We find persuasive the District of Columbia Court of Appeals's logic in Martin on the topic of waiver. Because Mr. Clark's right to counsel did not depend on him demonstrating that he would consult with counsel, Mr. Clark's failure to object to such an

extreme no-communication order could not have waived the right. See Martin, 991 A.2d at 796; Brewer, 430 U.S. at 404. Instead, a waiver by Mr. Clark of the right to counsel during a critical stage of the proceedings had to be intentional, and the Supreme Court has instructed that we should "indulge in every reasonable presumption against waiver." Brewer, 430 U.S. at 404 (citations omitted); Zerbst, 304 U.S. at 464; State v. Renshaw, 276 Md. 259, 265-66, 347 A.2d 219, 224 (1975).

With all of that said, the foremost problem with the Third Circuit's reasoning in Bailey, 657 F.2d at 24, is that it justified the "actual deprivation" rule by relying on a requirement in Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) that, where a defendant objects to multiple representation,[20] "a reviewing court cannot presume that the possibility for a conflict has resulted in ineffective assistance of counsel[,]" rather, "a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial."[21] In Bailey, 657 F.2d at 24, relying on the Supreme Court's holding in Cuyler, 446 U.S. at 349-50, the Third Circuit stated that "[t]he distinction between the 'deprivation' of right and the 'prejudice' that may result therefrom

---

[20]In Cuyler, 446 U.S. at 337, two privately retained lawyers represented both Mr. Sullivan and two other people who were charged with the same murders.

[21]In Cuyler, 446 U.S. at 350, the Supreme Court held that, where the defendant had shown that multiple representation in the case involved a possible conflict of interest, "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." The Supreme Court concluded that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief[, b]ut until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. at 349-50.

is not a new one[,]" and "[a] showing that one has been 'deprived' of his right to effective counsel is a predicate to relief[.]" (Footnote omitted). But, after <u>Cuyler</u>, in <u>Strickland</u>, 466 U.S. at 692, the Supreme Court identified the three circumstances under which prejudice would be presumed and the Supreme Court did not require the showing of any condition precedent for the actual or constructive denial of the assistance of counsel. In contrast, in <u>Strickland</u>, 466 U.S. at 692, the Supreme Court maintained the requirement that the presumption of prejudice in a conflict-of-interest claim requires a showing (*i.e.*, that counsel actively represented conflicting interests and that an actual conflict adversely affected counsel's performance), which is *not* needed under the *per se* rule of presumed prejudice for the actual or constructive denial of the assistance of counsel.

Because the Supreme Court issued <u>Strickland</u> after the Third Circuit's <u>Bailey</u> decision, <u>Strickland</u> supersedes the reasoning in <u>Bailey</u>, 657 F.2d at 24, that <u>Cuyler</u> supports "[t]he distinction between the 'deprivation' of a right and the 'prejudice' that may result[,]" where the actual denial of assistance to counsel is concerned. Under <u>Strickland</u>, 466 U.S. at 692, <u>Cuyler</u>-like claims warrant a more limited presumption of prejudice than <u>Geders</u>-like claims, unlike in cases of actual or constructive denial of the assistance of counsel, to which the *per se* presumption of prejudice rule applies. In short, the reasoning in <u>Bailey</u> is based on a type of ineffective assistance of counsel claim—conflict of interest—for which the Supreme Court has required that the defendant fulfill conditions precedent before the presumption of prejudice is warranted; whereas, with respect to claims of actual and constructive denial of the assistance of counsel, no showing or demonstration by a defendant as a condition precedent is required to warrant a presumption of prejudice.

See Strickland, 466 U.S. at 692. Thus, Bailey's basis for its "actual deprivation" rule in claims based on the actual denial of the assistance of counsel, although adopted by some courts in other jurisdictions, is no longer good law.

**Conclusion**

We hold that trial counsel's failure to object to the trial court's order prohibiting all communication between defendant and counsel about the case during an overnight recess in a criminal trial, without any curative action, resulted in the actual denial of the assistance of counsel in violation of the Sixth Amendment to the United States Constitution and, under Strickland, prejudice is presumed. Further, trial counsel's failure to object to the no-communication order resulted the actual denial of the assistance of counsel in violation of Articles 21 and 24 of the Maryland Declaration of Rights and a presumption of prejudice is warranted under our own interpretation of independent Maryland Constitutional provisions. Trial counsel's failure to object to such an order resulted in an unconstitutional impediment to the defendant's right to counsel under the Sixth Amendment and the Maryland Declaration of Rights that merits reversal without a requirement that the defendant prove prejudice. Prejudice is presumed without the requirement that the defendant satisfy any condition precedent.

We stress that the circumstances under which a petitioner asserting ineffective assistance of counsel need not show prejudice remain narrow, and include only the limited exceptions of the actual denial of the assistance of counsel, constructive denial of the assistance of counsel, and conflict of interest. In this case, due to the actual denial of the assistance of counsel, prejudice is presumed. The circuit court correctly reached the same

conclusion, properly ordering a new trial for Mr. Clark.[22]

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED. RESPONDENT TO PAY COSTS.**

---

[22]In failing to object to the trial court's no-communication order for the duration of an overnight recess before the last day of testimony in the trial—a clear violation of Mr. Clark's Sixth Amendment right to counsel as described in <u>Geders</u>—Mr. Clark's trial counsel's performance was deficient. Thus, with prejudice presumed, Mr. Clark has satisfied the burden of establishing the two components necessary to demonstrate the ineffective assistance of counsel—deficient performance and prejudice—and is entitled to a new trial, as the circuit court in this case ordered. <u>See</u> <u>Ramirez</u>, 464 Md. at 539, 212 A.3d at 367.

Circuit Court for Howard County
Case No. C-13-CR-18-000001
Argued: March 3, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 25

September Term, 2022
_____

DAMIEN GARY CLARK

v.

STATE OF MARYLAND
_____

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.
_____

Concurring Opinion of Biran, J.,
which Watts, Hotten, and Eaves, JJ., join.
_____

Filed: August 31, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

I am pleased to join the Majority Opinion in this important case. I write separately to explain why I believe it is appropriate for the Majority to base its holding, in part, on Articles 21 and 24 of the Maryland Declaration of Rights, despite the lack of briefing and argument concerning these independent state law grounds. As Chief Justice Fader and Justice Gould explain in their dissenting opinions, we typically refrain from deciding issues that are not preserved and have not been thoroughly briefed and argued by the parties before us. I do not endorse a different course of action here lightly. However, we are not foreclosed, in an appropriate case, from departing from our normal practice. *See* Md. Rule 8-131(a) ("*Ordinarily*, an appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" (emphasis added)); Md. Rule 8-131(b)(1) ("Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Appellate Court or by a circuit court acting in an appellate capacity, the Supreme Court *ordinarily* will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Supreme Court." (emphasis added)); *see also Jones v. State*, 379 Md. 704, 712-13 (2004) ("The word 'ordinarily' in Rule 8-131(a) anticipates that an appellate court will, on appropriate occasion, review unpreserved issues. This has been the practice of the Maryland appellate courts, as well as of the federal courts and our sister states, dating well before Rule 8-131(a)."); *MAS Assocs., LLC v. Korotki*, 475 Md. 325, 365 (2021) ("The use of the term 'ordinarily' in Maryland Rule 8-131(b)(1) implies that this Court possesses the discretion to consider issues that were not necessarily raised in the

petition or order for a Writ of Certiorari." (some internal quotation marks and citation omitted)).

In my view, exceptional circumstances exist that warrant the departure from our ordinary practice here. They are: (1) the failure of the Supreme Court to explicitly answer the question with which we are presented in the 39 years since the Court decided *Strickland v. Washington*, 466 U.S. 668 (1984); and (2) the close relationship between the preserved Sixth Amendment question and the unpreserved Maryland constitutional question in this case.

I agree with the Majority Opinion that the answer to the question presented here is, and should be, the same under the Sixth Amendment as it is under Articles 21 and 24 of the Maryland Declaration of Rights. However, despite the recurring nature of the problem throughout the nation – trial court orders that preclude communication between criminal defendants and their attorneys during overnight recesses that occur in the midst of defendants' trial testimony – the United States Supreme Court has not decided whether the presumption of prejudice of which it spoke in *Strickland*, 466 U.S. at 692, applies to claims of ineffective assistance of counsel based on trial counsel's failure to object to such orders. In this regard, this case resembles *Leidig v. State*, 475 Md. 181 (2021), in which we held that the Supreme Court's failure to provide a conclusive answer to a Sixth Amendment Confrontation Clause question over the course of several years warranted this Court's answering it under Article 21's confrontation provision.

I recognize that, in *Leidig*, the petitioner made alternative arguments under the Sixth Amendment and Article 21. Here, Mr. Clark only made his argument under the Sixth

Amendment. The State, therefore, understandably did not make any argument as to Article 21 and Article 24. In most cases, I would be in favor of at least asking for supplemental briefing before deciding an issue that had not been briefed and argued. However, it is not as if the unbriefed/unargued issue in this case is unrelated to the issue that was briefed and argued by the parties. To the contrary, they are as closely related as two issues can be. All parties understand that both the United States and the Maryland Constitutions afford criminal defendants a right to the effective assistance of counsel.

It is possible that, if we asked the State for supplemental briefing regarding Article 21 and Article 24, the State would recognize that there are "some persuasive reasons why a presumption of prejudice is sensible in a case like this, and why it may be important to recognize such a presumption [under the Maryland Constitution] to preserve the right to the effective assistance of counsel regardless of whether there has been a showing of an actual denial of that right," as the State and my dissenting colleagues understand the meaning of the phrase "actual denial." Dissenting Op. of Fader, C.J., at 7; *see also Perry v. State*, 357 Md. 37, 85 & n.11 (1999) (in an ineffective assistance of counsel case, disagreeing with a position taken by Justice Lewis Powell in a concurring opinion in *Kimmelman v. Morrison*, 475 U.S. 365, 391 (1986), and subsequently also by the United States Court of Appeals for the Seventh Circuit, and explaining that this Court's conclusions "announced in this Opinion … constitute our construction of the independent Maryland Constitutional provision [Article 21]"). However, for present purposes, I will assume that, if we were to ask for supplemental briefing, the State would argue that: (1) the State wins under the Sixth Amendment; (2) Article 21 and Article 24 should not be read to

- 3 -

provide any broader protection to criminal defendants than the Sixth Amendment does in this context; and (3) therefore, the State wins under an Article 21 and Article 24 analysis.

The Court does not need to wait for the State to tell us that before deciding whether we agree or disagree. We already know that the Majority disagrees with the threshold premise that the State prevails under the Sixth Amendment.[1]

As Justice Watts has explained, the Majority believes that the United States Supreme Court would decide this case in Mr. Clark's favor under the Sixth Amendment. But, ultimately, whether the Supreme Court agrees with the Majority under the Sixth Amendment does not affect my conception of the right to counsel under Articles 21 and 24. The right to counsel is arguably the most important right enshrined in Maryland's Constitution. I expect that, when the Supreme Court eventually decides whether the Sixth Amendment provides the same amount of protection as Article 21 and Article 24 do in this context, it will answer in the affirmative. But if I am wrong about that, then I will be proud that Maryland provides a more robust right to counsel in this context under Article 21 and Article 24.

---

[1] The State could *not* argue that, if the Court disagrees with the State on the Sixth Amendment ground, the Court should affirm the judgment of the Appellate Court under Article 21 and/or Article 24. *See Leidig*, 475 Md. at 241 n.25 (observing that, "[i]f the Supreme Court subsequently interprets the Sixth Amendment Confrontation Clause to provide greater protection than we afford to a criminal defendant under Article 21, Maryland courts will, of course, be bound to apply such a new Sixth Amendment standard").

I do not want to waste anybody's time. That includes the State, but even more so, Mr. Clark. He is entitled to a new trial. The Majority is right to order that now, rather than wait to do so until the next term of Court.

Justices Watts, Hotten, and Eaves have authorized me to state that they join this opinion.

IN THE SUPREME COURT

OF MARYLAND*

No. 25

September Term, 2022

_____

DAMIEN GARY CLARK

v.

STATE OF MARYLAND

_____

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

_____

Dissenting Opinion by Fader, C.J., which Booth
and Gould, J.J. join.

_____

Filed: August 31, 2023

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Respectfully, I dissent. I would affirm the Appellate Court's decision concerning the application of federal constitutional law to this case. Because the parties did not brief or argue any issues with respect to the possible application of Maryland constitutional law, I would not address those issues without first soliciting briefing from the parties and setting this case in for re-argument.

A fundamental disconnect between the very thorough majority opinion and the equally thorough principal dissent, authored by Justice Gould, is over the meaning of the phrase "actual denial." The Majority views it as settled by precedent that an unobjected-to and uncorrected no-communication order constitutes an actual denial of the assistance of counsel, regardless of whether it is proven, probable, possible, or even conceivable that the defendant and counsel would have spoken but for that directive. *See, e.g.*, Maj. Slip Op. at 29, 56-57 (asserting that the result the Majority reaches is compelled by principles of *stare decisis*). Justice Gould, by contrast, understands actual denial to include a component of actuality, meaning that the denial must have been real and existed in fact. *See* Dissenting Op. of Gould, J. at 26.

The primary law applied in both the Majority opinion and in Justice Gould's dissent is federal constitutional law, specifically the intersection of two aspects of the law concerning the Sixth Amendment right to the effective assistance of counsel: (1) the right to consult with counsel over extended breaks in testimony identified in *Geders v. United States*, 425 U.S. 80 (1976), and its progeny; and (2) the requirements for proving a deprivation of the right to the effective assistance of counsel identified in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. There is good reason the opinions focus

primarily on federal constitutional law, as Mr. Clark's claim was raised based solely on federal law and the parties' briefs, with one small exception, concern only federal law.[1] The first exploration of the potential application of Article 21 and Article 24 of the Maryland Declaration of Rights to this matter comes in the Majority opinion. *See* Maj. Slip Op. at 44-48. I will therefore divide my comments between the Majority's analysis of the federal constitutional issues, which are properly before us, and the Maryland constitutional issues, which are not.

## A. Mr. Clark's Federal Constitutional Claims

The critical issue in dispute is whether a no-communication order necessarily results in an actual denial of the assistance of counsel.[2] *See Strickland*, 466 U.S. at 691-92 (stating that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the [United States] Constitution" and then identifying the "[a]ctual . . . denial of the assistance of counsel altogether" as an instance in which such prejudice from such deficiencies is presumed). If it does, then I would agree

---

[1] In his reply brief, Mr. Clark quotes Article 21 of the Maryland Declaration of Rights in the course of making an argument about the "constitutional right to counsel," but he does not argue that it has any different meaning from the Sixth Amendment to the United States Constitution.

[2] I agree with Justice Gould that under *Strickland*, analytically, the relevant causal relationship must exist between counsel's deficient performance in not objecting to the no-communication order and any actual denial of the assistance of counsel. Dissenting Op. of Gould, J. at 23-25. However, because we must assume that an objection would have caused the trial court to correct its error, *Newton v. State*, 455 Md. 341, 361 (2017), there is effectively no difference between asking whether counsel's failure to object resulted in an actual denial of the assistance of counsel and whether the court's no-communication order itself effected such a denial.

with the Majority that a presumption of prejudice arises under *Strickland*, 466 U.S. at 692, and Mr. Clark would prevail. If it does not, however, then Mr. Clark cannot prevail.

As a starting point, none of the cases on which the Majority opinion predominantly relies—*Geders*; *Perry v. Leeke*, 488 U.S. 272 (1989); *Strickland*; or *Ramirez v. State*, 464 Md. 532 (2019)—held, either expressly or implicitly, that a no-communication order always results in an actual denial of the assistance of counsel for purposes of the *Strickland* analysis. In both *Geders* and *Perry*, the no-communication orders at issue were contested at trial, so the issue was not presented. *See Geders*, 425 U.S. at 82 (stating that petitioner's counsel objected to the no-communication instruction); *Perry*, 488 U.S. at 274 (stating that counsel moved for a mistrial based on the no-communication instruction). In *Strickland*, the United States Supreme Court established a presumption of prejudice when there has been an "[a]ctual . . . denial of the assistance of counsel altogether," 466 U.S. at 692, but did not identify the circumstances in which an actual denial occurs, much less explore whether an actual denial results from a no-communication order. And in *Ramirez*, this Court briefly discussed the actual denial exception to the requirement to prove prejudice under *Strickland*—and, as I discuss below, adopted a definition of actual denial—but also did not discuss whether a no-communication order necessarily results in an actual denial of the assistance of counsel because there was no such order in that case. 464 Md. at 574-75.

The Majority nonetheless treats those cases as establishing that the phrase "actual denial" necessarily encompasses a no-communication order. By contrast, Justice Gould interprets the phrase as encompassing the failure to object to a no-communication order

3

only if there is some evidence—any evidence—that the order actually inhibited communication between a defendant and counsel. Dissenting Op. of Gould, J. at 30-32. On that issue, Justice Gould has the more sound analysis.

First, I have no qualms with the Majority's definition of denial as a "'refusal to satisfy a request or desire[,]' or 'refusal to grant or allow something[.]'" Maj. Slip Op. at 31 n.11 (quoting two dictionary definitions of "denial"). But "denial," as used by the United States Supreme Court in *Strickland* and applied here, does not stand alone; it is modified by "actual."[3] In this context, "actual" means "existing in fact or reality" and "existing or occurring at the time." *Actual*, *Merriam-Webster's Collegiate Dictionary* 13 (11th ed. 2014); *see also Actual*, *New Oxford American Dictionary* 16 (3d ed. 2010) (defining "actual" as "existing in fact; typically as contrasted with what was intended, expected, or believed"). "Actual denial" thus refers to a refusal that exists in fact, i.e., that has effect. The Majority's understanding of "actual denial" effectively strips the modifier "actual" away, thus broadening the exception identified in *Strickland* beyond its plain meaning and beyond what the United States Supreme Court and this Court have previously recognized.

Second, the Majority's reliance on *Ramirez* for its different understanding of "actual denial" is misplaced. In *Ramirez*, relying on *United States v. Cronic*, 466 U.S. 648 (1984), this Court included the following definition: "Actual denial of the assistance of counsel

---

[3] As discussed below, in *Strickland*, "denial" is also modified by "constructive." 466 U.S. at 692. Because Mr. Clark's claim is of an actual denial of the assistance of counsel, I focus my discussion on that.

4

occurs where 'counsel was either totally absent, or prevented from assisting the [petitioner] during a critical stage of the proceeding." 464 Md. at 574 (alteration in original) (quoting *Cronic*, 466 U.S. at 659 n.25). Mr. Clark has not claimed that his counsel was totally absent, nor could he.[4] In making the case that Mr. Clark's counsel was "prevented from assisting [him] during a critical stage of the proceeding," the Majority relies on the following definitions of "prevent": "'to keep from happening or existing' and 'to deprive of power or hope of acting or succeeding[.]'" Maj. Slip Op. at 54-55 (quoting two dictionary definitions). However, both of those definitions instead bolster the plain language understanding of "actual denial." An action does not "*keep* [something] from happening or existing" if that thing would not have happened or existed anyway, nor does an action "*deprive*" someone of something that the individual would not have had otherwise. (Emphasis added).

Third, the Majority includes several statements to the effect that neither the United States Supreme Court nor this Court has ever "required a defendant to demonstrate or prove anything as a condition to the presumption applying[.]" *See, e.g.*, Maj. Slip Op. at 43-44; *see also id.* at 19 ("With respect to an actual or constructive denial of the assistance of counsel and certain kinds of State interference, no affirmative showing or demonstration by the defendant is required; rather, there is a *per se* rule of prejudice."), *id.* at 35 ("This Court has never held that, to establish that counsel was prevented from rendering assistance

---

[4] The issue before us is not whether Mr. Clark's counsel was present to object to the no-communication order, as he indisputably was, but whether he provided ineffective assistance of counsel by not objecting when the order was given in his presence.

5

during a critical stage of the proceedings, a defendant is required to demonstrate that the defendant wanted to, or would have taken advantage of the opportunity to, speak with counsel."), *id.* at 69-70 ("Prejudice is presumed without the requirement that the defendant satisfy any condition precedent."). But the United States Supreme Court and this Court have both stated that the presumption of prejudice applies in only three instances: (1) the "[a]ctual . . . denial of the assistance of counsel altogether"; (2) the "constructive denial of the assistance of counsel altogether"; and (3) "when counsel [was] burdened by an actual conflict of interest[.]" *Ramirez*, 464 Md. at 574 (alterations in original) (quoting *Strickland*, 466 U.S. at 692). To trigger a presumption of prejudice under *Strickland*, therefore, a defendant must identify the existence of one of those three circumstances. If any of them exist, *then* nothing further is required to invoke the presumption of prejudice. But that does not obviate the need to at least identify, in this case, an actual denial of the assistance of counsel. And, in my understanding of it, that is all the analysis in Justice Gould's dissent would require: some demonstration that a circumstance that must exist to give rise to a presumption of prejudice does, in actuality, exist. That demonstration can be made by an objection at trial, some other indication from trial that the defendant and counsel would have spoken but for the no-communication order, or some evidence put forward at a subsequent proceeding to that effect. *See* Dissenting Op. of Gould, J. at 37-38.

To the extent the Majority's decision today purports to apply federal constitutional law, the Majority has effectively added a fourth exception in which this Court will presume prejudice for purposes of applying *Strickland*, which is when a court issued a no-

6

communication order. I dissent from that portion of the Majority's holding because I think that controlling precedent concerning federal constitutional law mandates it. *See Ramirez*, 464 Md. at 574-75 (concluding that "[t]he [United States] Supreme Court's opinions in *Strickland* and *Cronic* establish that the presumption of prejudice applies only under three circumstances" and that if it "applied under any circumstance other than [those] three, the Supreme Court would have stated as much in its thorough discussion of the presumption of prejudice in *Cronic*" (citations omitted)).

B.     **The Majority's State Constitutional Holding**

In addition to its reliance on federal constitutional law, the Majority also concludes that the no-communication order under review violated Articles 21 and 24 of the Maryland Declaration of Rights. Maj. Slip Op. at 2, 44-48, 69-70. In doing so, the Majority identifies some persuasive reasons why a presumption of prejudice is sensible in a case like this, and why it may be important to recognize such a presumption to preserve the right to the effective assistance of counsel regardless of whether there has been a showing of an actual denial of that right. *Id.* at 60-61, 62-63. I am convinced that those concerns are worth further exploration and may ultimately lead me to conclude that the order in this case violated Mr. Clark's rights under the Constitution of Maryland.

The problem with drawing that conclusion here, however, is that not only was it not raised or decided in the courts below, *see* Md. Rule 8-131(a) ("Ordinarily, an appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."),

but it also was neither briefed nor argued by the parties in this Court. We have commented on the limited circumstances in which it is appropriate for an appellate court to review *any* unpreserved issue: "We usually elect to review an unpreserved issue *only after it has been thoroughly briefed and argued*, and where a decision would (1) help correct a recurring error, (2) provide guidance when there is likely to be a new trial, or (3) offer assistance if there is a subsequent collateral attack on the conviction." *Ray v. State*, 435 Md. 1, 22 (2013) (quoting *Conyers v. State*, 354 Md. 132, 151 (1999)) (emphasis added). This is not such a situation.

The Majority is correct that we may interpret our Maryland Constitution to offer broader protection than the United States Constitution, and that we have sometimes done so. *See, e.g.*, *Leidig v. State*, 475 Md. 181, 234-42 (2021) (addressing a claim concerning the right to confrontation of witnesses under Article 21 in light of a lack of clarity in decisions of the United States Supreme Court under the Sixth Amendment to the United States Constitution). As a general matter, I welcome the opportunity to explore claims properly brought, or at a minimum properly briefed and argued, by litigants under the Maryland Constitution. However, I am not aware of a circumstance in which we have decided to do so without the benefit of *any* argument and analysis by the parties, much less the thorough briefing and argument we ordinarily treat as a prerequisite to addressing unpreserved issues of any variety. For that reason, although there is much to commend in the Majority's brief analysis addressing our State Constitution, I would not rule on that basis without first (1) providing the parties with notice that the Court is considering ruling

8

on that basis, (2) inviting the parties to submit briefs addressing that issue, and (3) setting

this case in for re-argument.

Justice Booth and Justice Gould advise that they join this dissenting opinion.

Circuit Court for Howard County
Case No. C-13-CR-18-000001
Argued:  March 3, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 25

September Term, 2022

_____

DAMIEN GARY CLARK

v.

STATE OF MARYLAND
_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.
_____

Dissenting Opinion by Gould, J., which
Fader, C.J., and Booth, J., join.
_____

Filed: August 31, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

The issue here is whether, in a post-conviction claim of ineffective assistance of counsel predicated on trial counsel's failure to object to the court's improper order barring the defendant from communicating with counsel during the overnight recess, the defendant is entitled to a presumption of prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). Although this is an issue of first impression in this Court, established Sixth Amendment jurisprudence from both this Court and the United States Supreme Court provides a clear analytical path for resolving this question. That path is animated by the well-settled proposition that direct appeals alleging certain trial court errors are subject to a less exacting standard than ineffective-assistance-of-counsel claims predicated on defense counsel's failure to object to such errors.

If trial counsel preserves for appeal a court's improper order barring communication between the defendant and his counsel during an overnight recess ("no-communication order"), there is no question that, under *Geders v. United States*, 425 U.S. 80 (1976),[1] in a direct appeal, the defendant would automatically be entitled to a new trial. If defense counsel objects to the improper order, the defendant is not required to establish a record in the trial court that, but for the improper order, the defendant and counsel would have communicated during the recess. Nor would the defendant have to demonstrate on appeal that the result at trial would have been different but for the improper order. The reason is simple: such an order plainly violates the Sixth Amendment under *Geders*; the objection

---

[1] In *Geders*, the United States Supreme Court held that an order restricting a defendant from consulting with counsel "about anything" during an overnight recess violated the defendant's Sixth Amendment right to the assistance of counsel. 425 U.S. at 91.

tells the trial court that the order is improper and that the defendant and his counsel want to, at a minimum, keep the line of communication open during the overnight recess; and no defendant should be required to disclose what he intends to do with his right to counsel as a condition of keeping it.[2]

Think of it this way: Before the court issued the improper no-communication order, it wasn't the court's business whether the defendant and his counsel would have communicated during the recess, and it certainly does not become the court's business *after* the court issues the improper order. So if the defendant timely objects to the no-communication order, and the court refuses to rescind the order, we simply don't trust the outcome—no questions asked.

Although both claims are grounded in the Sixth Amendment, a direct appeal from a *Geders* violation is analytically distinct from an ineffective assistance of counsel claim. This distinction is particularly acute when the deficient performance was counsel's failure to object to an improper no-communication order. In a direct appeal, the defendant's objection notified the trial court that the order was unlawful, and yet the court refused to rescind it. So, the court is to blame for the fact that defendant was denied access to counsel and a new trial, therefore, is automatic. But in a claim for ineffective assistance of counsel, we assume that if counsel had timely objected, the court would have done the right thing and rescinded the order. Thus, if defendant was denied access to counsel during an

---

[2] Thus, an objection to an improper no-communication order is not, for preservation purposes, treated like an objection to the exclusion of evidence which, to be preserved, must be accompanied by a proffer of the substance of the excluded evidence. A *Geders* violation is, and should be, treated differently than a garden-variety evidentiary ruling.

overnight recess, the blame no longer lies with the court, but instead must lie with defendant's counsel.

The Sixth Amendment is not necessarily offended, however, if a defendant cannot access his lawyer during a lengthy recess for reasons *other* than a trial court's improper order. So the question then becomes: Was defense counsel's failure to object, as a factual matter, the causal agent for defendant's inability to communicate with counsel during the overnight recess? We should ask that question because, for example, if defense counsel was going to be unavailable during the entire overnight recess anyway, you can't blame his failure to object for the fact that they did not communicate. Similarly, if the defendant had no desire or inclination to speak with counsel in the first place, counsel's failure to object did not have any effect on their ability to communicate.

Moreover, unlike when a defendant timely objects to the improper order during the trial, to ask that question in a post-conviction proceeding does not insert the court into an area in which it has no business. The defendant already had his trial, no trial is perfect, and before the court grants the defendant a do-over, it's not unfair for the court to require the defendant to at least show that he would have *wanted* to communicate with counsel had he been allowed to do so. Not *what* he would have wanted to discuss or *how* he would have taken advantage of the opportunity to speak with counsel—which always was and should remain none of the court's business—just *whether* he wanted to do so. Post-conviction courts are not in the business of granting a windfall of a new trial.

Therein lies the fault line between the Majority's analysis and mine. Ineffective assistance of counsel claims are governed by *Strickland*, which requires a defendant to

3

prove that counsel's deficient performance—not the trial court's improper order—denied him his Sixth Amendment right to the effective assistance of counsel. *Strickland* requires proof that but-for counsel's deficient performance, the outcome would likely have been different. A defendant is relieved of that burden if, as a factual matter, counsel's deficient performance—here, counsel's failure to object to the improper order—prevented him from communicating with counsel. When that happens, *Strickland* demands that we presume that the outcome would have been different, and that the defendant should be entitled to a new trial.

The Majority, however, concludes that it's too much to ask in a *Strickland* claim whether the defendant wanted to speak with counsel during the overnight recess, let alone would have done so. As the Majority sees it, that the no-communication order was per se reversible error is enough to find that Mr. Clark was denied his Sixth Amendment right to the effective assistance of counsel. In effect, but without saying so, the Majority disregards settled precedent by bypassing *Strickland* and reviewing the trial court's unobjected-to error under the plain error doctrine.

Moreover, the Majority provides an alternative holding based on issues neither raised nor briefed by either party—Articles 21 and 24 of the Maryland Declaration of Rights. In doing so, the Majority not only departs from settled principles of judicial restraint, but overturns this Court's recent reaffirmation of the well-established principle that we review ineffective-assistance-of-counsel claims under the United States Constitution and the Maryland Declaration of Rights using the same standards.

Accordingly, for the reasons more fully explained below, I respectfully dissent.

4

In February 2019, Appellant, Damien Gary Clark, was tried before a jury in the Circuit Court for Howard County on charges of second-degree murder, manslaughter, attempted second-degree murder, and several counts of assault. Mr. Clark was accused of stabbing two men during an altercation in a convenience store, causing the death of one and serious injury to the other.

Mr. Clark's trial took five days. The State called 18 witnesses and presented 76 exhibits. Defense counsel tried to establish, through its cross-examination of the State's witnesses, that the victims could have been high on marijuana, that they beat up Mr. Clark, that Mr. Clark had two black eyes from the fight, that the victims blocked Mr. Clark's exit from the convenience store, that Mr. Clark's wife, Felicia Cox, tried to break up the fight, that the victims could have easily exited the store, and that the surviving victim pushed Ms. Cox after she grabbed his hoodie.

The State rested on the fourth day of trial. Mr. Clark testified in his case-in-chief and successfully moved to admit two exhibits. In his testimony, Mr. Clark walked the jury through the entire encounter, from start to finish. He also narrated videos taken by the various security cameras at the store. Mr. Clark sought to establish that he stabbed the two men in defense of himself and his wife. He called no other witness.

After Mr. Clark completed his direct testimony, the court decided to recess for the night and scheduled the State's cross-examination to begin the next morning. The court then instructed Mr. Clark, as follows:

5

[THE COURT]: You can't talk to anybody about the case this evening even [trial counsel] and [the paralegal]. Okay?

[MR. CLARK]: Okay.

[THE COURT]: You can't talk to anybody. It sounds counterintuitive.

[MR. CLARK]: Yes.

[THE COURT]: You can't talk to your own attorney about the case.

[MR. CLARK]: I understand, sir.

Mr. Clark's defense counsel did not object to the court's instruction. The next morning, the State cross-examined Mr. Clark.

Mr. Clark's claim of self-defense was ultimately successful in part. The jury acquitted him of second-degree murder and assault in the first-degree, and convicted him of voluntary manslaughter, two counts of second-degree assault, and attempted second-degree murder. He was sentenced to 50 years in prison.

### *The Direct Appeal*

Mr. Clark noted an appeal. He contended, among other things, that the trial court denied him his Sixth Amendment right to counsel "after a critical day of testimony," when it instructed him not to speak with his attorney during the overnight recess. The State countered that because Mr. Clark neglected to object to the court's instruction at trial, he failed to preserve the issue for appeal. The State urged the Court not to review the issue

for plain error.[3]  In his reply brief, Mr. Clark asked the Court to conduct a plain error review.

In an unreported opinion, the Appellate Court of Maryland concluded that Mr. Clark's argument was not preserved for review and affirmed his convictions.  *Clark v. State*, No. 486, Sept. Term, 2019 (filed June 29, 2020).  Although the Appellate Court did not say so expressly, in so ruling, it declined to conduct plain error review.  The Court also opined that Mr. Clark's Sixth Amendment claim appeared meritorious, but that the proper way to raise it would be a post-conviction claim of ineffective assistance of counsel.

---

[3] As we stated in *Newton v. State*:

> Plain error review is "reserved for those errors that are compelling, extraordinary, exceptional or fundamental to assure the defendant of a fair trial." Before we can exercise our discretion to find plain error, four conditions must be met: (1) "there must be an error or defect—some sort of 'deviation from a legal rule'—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings'"; and (4) the error must "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings."

455 Md. 341, 364 (2017), *cert. denied*, 138 S. Ct. 665 (2018) (internal citations omitted).

*The Post-Conviction Hearing*

Mr. Clark subsequently filed a petition for post-conviction relief, alleging 12 claims of error by his trial counsel, including his counsel's failure to object when the trial court improperly barred Mr. Clark from communicating with counsel.[4]

On July 29, 2021, the circuit court held a post-conviction hearing. Mr. Clark's post-conviction counsel called Mr. Clark's trial counsel as the first witness. Trial counsel was questioned extensively about his trial strategy and thought processes behind many of the alleged errors or omissions. Trial counsel testified that, at the time of Mr. Clark's trial, he had been practicing criminal law for almost 20 years and had worked on approximately 40 homicide cases. When asked why he did not object to the trial court's improper instruction, trial counsel explained:

> At the time, I didn't think there was anything for us to talk about that evening. We had talked that morning, I guess when I delivered the suit to him. We talked during the trial, right before lunch. I believe, you know, at every break. It's not like I can leave here and call him. You know, I can't call into [Jessup Correctional Institute] at that time, they have it now, because of all the COVID. So, the issue would have been, did I want to go back downstairs in the sheriff's lockup and see him that day? And before we went down—at the end of each day, I would always ask him if he had any questions or

---

[4] In addition, Mr. Clark alleged deficient performance in that counsel allegedly: failed to request a "defense of others" instruction; failed to subpoena Ms. Cox; failed to subpoena "multiple individuals who were present during the fight"; failed to adequately cross-examine the surviving victim; failed to object to "irrelevant testimony about the knife in Mr. Clark's car"; failed to make an "adequate" motion for judgment of acquittal; failed to object to cumulative testimony about the victims' injuries; failed to apply for a three-judge panel to review Mr. Clark's sentence; failed to consult with Mr. Clark about applying for a three-judge panel review; filed an untimely and inadequate motion for a new trial; and elicited damaging evidence of Mr. Clark appearing angry.

anything like that. So, the answer is that I just didn't have anything to go over with him because I thought he was doing good on the witness stand.[5]

Trial counsel acknowledged that, although at the time of trial, he was not specifically aware of *Geders*, he was aware that Mr. Clark was entitled to confer with him, stating:

> [A defendant] always has a right to confer with me but if you're asking me, did I read that particular case, United States versus Geders and know it specifically, that case, no. I know he had a right to talk to me and if he said he had anything to say, I would have talked to him.

When cross-examined by the State, trial counsel elaborated upon his failure to object:

> For Mr. Clark's testimony, we practiced, without having a stopwatch, maybe eight to ten hours. We went to him. We went to [Jessup Correctional Institute]. We first would go over his notes. He would say, you know, after we got past a point, I advise him, you know, this is the risk of testifying and with the wife's situation. Then he said he want to testify. So we rehearsed. I would ask him direct and then I would have another young lady with me, (indiscernible), cross. And then we swapped and sometimes I would be the prosecutor and she would be the person and he would answer questions and we would go over the phrases he uses, the words he uses, his facial expression, you know, his pace, how to respond when confronted with evidence and how to do [sic]. And then we'd say, you know, try this or try that or why don't you do this or why don't you do that. We did that for many hours.

---

[5] The Majority contends that "[t]he only reasonable inference to draw from this testimony is that the no-communication order prevented [trial counsel] from doing what he had done at the end of the prior days of trial—asking Mr. Clark if he had any questions." Maj. slip op. at 63. I disagree. Trial counsel said he "always" asked Mr. Clark if he had any questions "at the end of each day[.]" In my view, counsel's use of the words "always" and "each day" means that the court's no-communication order didn't stop him from asking.

9

The State also asked trial counsel whether, at the conclusion of Mr. Clark's direct testimony, he had any concerns that he had wanted to address with Mr. Clark during the overnight recess, to which he responded:

> No. We talked all day. We talked in the morning, every break, lunch break or break to do this and that and sit at the trial table, go back and forth. After lunch before we sat down, we talked. [Or] if we wanted to go down, we'd go down and talk to him. At the end of the incident, you know, at the end of that day, I think he was sitting up here but I didn't have anything to ask him, and he didn't say, hey, I want to talk to you. And so, I guess I could have objected for the record that if the judge was wrong, I think the judge is wrong but, you know, I didn't have anything—I'd be lying if I said I had something to say and we were prevented from saying it.

> The following exchange then occurred:

> [THE STATE]: Had [Mr. Clark] said, I want to speak to my attorney, would you have advocated on his behalf to—

> [TRIAL COUNSEL]: Absolutely.

> [THE STATE]: And just so I have—just so this record is clear in terms of what was happening at that point in time in the trial, it was the end of a day of testimony, right? It was the end of the day. The attorneys were going home. [Mr. Clark] was being returned to the Detention Center. And everyone was due to return first thing in the morning and start right away. Is that fair?

> [TRIAL COUNSEL]: Yes.

> [THE STATE]: And so, it wasn't a situation where we're taking a two-hour break for everyone to work on the case, right?

> [TRIAL COUNSEL]: That's correct.

> [THE STATE]: It was the end of the day. The day's work was over.

> [TRIAL COUNSEL]: That's correct.

> [THE STATE]: We all know at night attorneys might look over notes, et cetera, but he wasn't coming to your office that night. Is that fair?

10

[TRIAL COUNSEL]: No.

[THE STATE]: He was at the Detention Center.

[TRIAL COUNSEL]: And we can't call him.

[THE STATE]: All right. You couldn't even call him. And he went immediately back on the stand the next day. Is that your recollection?

[TRIAL COUNSEL]: Yes.

∗ ∗ ∗

[THE STATE]: And so essentially zero business minutes in a strange way of saying that?

[TRIAL COUNSEL]: Yes.

[THE STATE]: Okay. And do you recall the next morning before he testified whether he expressed any indication to you or [the paralegal] in your presence that he had questions of you or wanted to talk to you?

[TRIAL COUNSEL]: No. We had come back in the morning. The sheriff brought him out to sit at the table. [The paralegal], myself—[the paralegal], the other lawyer who was assisting, and myself were sitting at the table, you know, are you okay? You know . . . we're going to do this. We're [going to] do that or whatever. We talked at the trial table with him.[6]

---

[6] The Majority asserts that:

[Trial counsel] was not asked and offered no testimony as to whether, independent of his observation that Mr. Clark did not say he wanted to speak with him while in the courtroom, he knew whether Mr. Clark developed the desire to speak with him later during the recess or whether Mr. Clark had wanted to waive the right to counsel. [Trial counsel] also offered no testimony as to whether it would have been desirable or advantageous for him to speak to Mr. Clark about matters other than his testimony, such as a potential plea bargain, potential rebuttal witnesses for the State, or next steps in the trial.

Maj. slip op. at 6-7.

11

[THE STATE]: All right. So, you actually communicated with him, but you just didn't talk about the substance—

[TRIAL COUNSEL]: Yes.

[THE STATE]: —of his testimony?

[TRIAL COUNSEL]: Yes. Yeah.

[THE STATE]: And that was really—I don't want to—was that [your] perception of the spirit of [the trial judge's] order?

[TRIAL COUNSEL]: Uhm.

[THE STATE]: If you don't know, I'm not going ask you to—

[TRIAL COUNSEL]: I don't know the spirit of his order. When I read it now, reading it at the post-conviction, I say wow, I should have objected but was I going to meet with him or say anything that night? The answer is no. And he didn't ask me.

The post-conviction court found that the trial court's instruction was inconsistent with the holding in *Geders*. The post-conviction court also found that trial counsel's performance was deficient, stating that there was no evidence of "a legitimate strategic or tactical reason for letting the instruction go." According to the court, although trial counsel did not believe that there was a need to speak with Mr. Clark that evening, the right to

The Majority is incorrect. As the above exchange shows, trial counsel *did* testify that he had spoken with Mr. Clark the next morning before the cross-examination began and asked him if he was okay and discussed what they were going to do. When Mr. Clark testified, he did not contradict trial counsel on this point.

Moreover, the Majority's assertion that trial counsel "offered no testimony" on whether "it would have been desirable or advantageous for him to speak to Mr. Clark" about matters other than his testimony is likewise not correct. *Id.* Trial counsel testified that "I'd be lying if I said I had something to say and we were prevented from saying it."

assistance of counsel belonged to Mr. Clark, and Mr. Clark may have wanted to consult with counsel but was not allowed to by the court.

In addition, the post-conviction court found that trial counsel's failure to object to the instruction prejudiced Mr. Clark "not only because he was deprived of his Sixth Amendment right to counsel during the overnight recess, but also because he was not able to raise the issue on appeal due to trial counsel's failure to object to the erroneous instruction." On that basis, the post-conviction court granted Mr. Clark a new trial.

### *The Appellate Court of Maryland's Decision on the Post-Conviction Appeal*

The Appellate Court reversed the judgment of the post-conviction court. *State v. Clark*, 255 Md. App. 327, 347-48 (2022). In doing so, it rejected Mr. Clark's argument that, under *Geders*, the trial court's instruction denied him effective assistance of counsel and that he was therefore entitled to the presumption of prejudice. *Id.* at 346. The Court instead applied the test for ineffective assistance of counsel established in *Strickland*. Under *Strickland*, a defendant seeking to prove ineffective assistance of counsel must prove "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." 466 U.S. at 687.

The Appellate Court determined that, in the absence of an objection to the instruction at trial, Mr. Clark needed to show that he was, in fact, deprived of the right to counsel in order to enjoy a presumption of prejudice based on the actual denial of counsel under *Strickland*. Thus, he needed to show that he wanted to speak to counsel or that counsel wanted to speak to him, and that they would have done so absent the instruction. *Clark*, 255 Md. App. at 345. In the absence of such evidence, the Court concluded that

13

Mr. Clark was required to show actual prejudice, which meant he had to "articulate how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 346 (quoting *Ramirez v. State*, 464 Md. 532, 564 (2019), *cert. denied*, 140 S. Ct. 1134 (2020)). Because Mr. Clark made no argument that, but for the lack of overnight consultation, the result of the trial would have been different, the Court found that he failed to prove he was prejudiced by counsel's failure to object to the court's instruction. *Id.* at 346. Having resolved Mr. Clark's *Strickland* claim under the prejudice prong, the Court declined to address the performance prong of the test. *Id.* at 340.

> Judge Douglas Nazarian dissented, stating, in part:
>
> Under *Geders* and the cases that follow it, Mr. Clark's Sixth Amendment rights were violated, in real life terms and in constitutional terms, when the court wrongly forbade him from conferring with counsel. The deprivation happened when the court ordered it, and certainly no later than the following morning, when the overnight recess ended. This is because the right to counsel was Mr. Clark's, not his counsel's to waive or neglect away. . . .
>
> . . . Although the deprivation that occurred here is identical to the deprivation in *Geders*, the majority required *him* to prove retroactively that he actually had planned to exercise the Sixth Amendment right the trial court forbade him from exercising . . . . He is worse off in constitutional and real-life terms for his counsel's indisputably deficient performance . . . .

*Id.* at 348-49 (Nazarian, J., dissenting).

Mr. Clark filed a petition for certiorari, which this Court granted. *Clark v. State*, 482 Md. 141 (2022).

14

## DISCUSSION

### *The Majority's Improper Alternative Holding*
### *Under the Maryland Declaration of Rights*

Mr. Clark did not ask us to address his post-conviction claim under the Maryland Declaration of Rights, but instead predicated his claim solely on the Sixth Amendment to the United States Constitution. Nevertheless, even though the parties did not brief the issues, the Majority alternatively holds that Mr. Clark's right to the effective assistance of counsel under Articles 21 and 24 of Maryland's Declaration of Rights was violated. Maj. slip op. at 2, 44-48. In so holding, the Majority violates settled principles of judicial restraint regarding issues not raised by the parties. Moreover, the Majority implicitly overturns this Court's confirmation that ineffective-assistance-of-counsel claims under the Maryland Declaration of Rights and the Sixth Amendment are governed by the same standards—specifically, the standards articulated in *Strickland*. For these two reasons, the Majority's *sua sponte* alternative holding based on State law is improper. *See Cnty. Council of Prince George's Cnty. v. Offen*, 334 Md. 499, 508 (1994).

We are "bound[ed] by a limited scope of review[.]" *Id.* As we have stated:

An appellate court ordinarily will consider only an issue which is properly raised by the parties in the appellate court, unless the issue concerns the jurisdiction of the trial court or the appellate court.[7] The failure of an

---

[7] There is only a "'narrow category of issues' that courts of appeal will 'sua sponte address' even if not raised by an appellant." *Turner v. Md. Dep't of Health*, 245 Md. App. 248, 268 (2020). "This category includes the jurisdiction of the intermediate appellate court, the jurisdiction of the trial court, and the certain fundamental questions of policy relating to the trial court's exercise of jurisdiction." *Joseph H. Munson Co. v. Sec'y of State*, 294 Md. 160, 169 (1982); *see also Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 488 (2011).

15

appellant to raise an issue in the appellate court is usually deemed a waiver as to the issue.

*Moats v. City of Hagerstown*, 324 Md. 519, 524-25 (1991); *see also Foster v. State*, 305 Md. 306, 315 (1986) (the failure to make a contention in a party's "briefs and oral arguments constitutes a waiver or abandonment of them"); *Health Servs. Cost Rev. Comm'n v. Lutheran Hosp. of Md., Inc.*, 298 Md. 651, 664 (1984) ("This Court has consistently held that a question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review.").

Mr. Clark did not advance any arguments predicated on the Maryland Declaration of Rights. Thus, the State was never given an opportunity to address these important issues. The alternative basis for the Majority's holding does not fall within the "narrow category of issues" that this Court addresses *sua sponte*.

Moreover, the Majority does not rest its alternative basis on settled principles of law. Rather, the Majority is making new constitutional law without the input of the parties. Quoting *DeWolfe v. Richmond*, 434 Md. 444 (2013), the Majority asserts "'that the due process right to counsel under Article 24 of the Declaration of Rights is broader than the right to counsel under Article 21 or the Sixth Amendment[,]' which 'has been reaffirmed by this Court on numerous occasions.'" Maj. slip op. at 44.

But the holding in *Richmond* was that "under Article 24 of the Maryland Declaration of Rights, an indigent defendant is entitled to state-furnished counsel at an initial hearing before a District Court Commissioner." 434 Md. at 464. That holding does not state, suggest, or imply that a court may bypass the two-pronged analysis established by

*Strickland*. Moreover, *Richmond* did not address the issue tackled by the Majority here: whether Article 24 or Article 21 of the Declaration of Rights provides broader rights than the Sixth Amendment for ineffective assistance of counsel claims. Here, the question is not whether Mr. Clark had the right to counsel in his criminal trial but whether his right to counsel was violated by counsel's failure to object to the no-communication order. *Richmond* does not answer that question.

Then, citing *Perry v. State*, 357 Md. 37 (1999), the Majority declares that "in ineffective assistance of counsel cases, we have held that Article 21 provides protections to a criminal defendant's right to counsel above and beyond that determined by the Supreme Court as to the Sixth Amendment." Maj. slip op. at 44. There are multiple reasons why *Perry* does not support this proposition.

*First*, we specifically noted in *Perry* that ineffective-assistance-of-counsel claims under Article 21 are governed by the same standards as under the Sixth Amendment. As we stated:

> We have traditionally regarded the right to counsel guaranteed under Article 21 as being the same right provided by the Sixth Amendment, and, in construing Article 21, we have followed and applied the decisions of the Supreme Court interpreting the Federal provision. *See State v. Tichnell*, 306 Md. 428, 440, 509 A.2d 1179, 1185, *cert. denied*, 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986) ("There is no distinction between the right to counsel guaranteed by the Sixth Amendment and Art. 21 of the Maryland Declaration of Rights...."); *Lodowski v. State*, 307 Md. 233, 513 A.2d 299 (1986); *Harris v. State*, 303 Md. 685, 496 A.2d 1074 (1985). In the context of ineffective assistance claims raised in post-conviction proceedings, we have therefore tended to focus on the Sixth Amendment jurisprudence, even when the claim is based on Article 21 as well, and, as a result, have applied a *Strickland/Fretwell* analysis to those claims. *State v. Colvin*, 314 Md. 1, 23-24, 548 A.2d 506, 517 (1988). We do so in this case as well.

17

357 Md. at 85 n.11. The Majority abandons this finding, again, without input from the parties.

*Second*, in *Perry*, we did not purport to expand a criminal defendant's right to counsel "above and beyond" that afforded under the Sixth Amendment, as the Majority contends. Rather, we clarified that right only *in the absence of* Supreme Court precedent on that question. *Perry*, 357 Md. at 85 n.11 ("With respect to the particular issue now in point, however, there is no controlling Supreme Court precedent supporting the Seventh Circuit Court's ruling. The issue is therefore an open one, both as a matter of Maryland law and, indeed, as a matter of Federal law outside the Seventh and Eleventh Circuits."). In contrast, here, unlike in *Perry*, the Majority resolves Mr. Clark's Sixth Amendment claim by applying existing Sixth Amendment jurisprudence.

*Third*, the language from *Perry* that the Majority cites for the proposition that Article 21 protections go "above and beyond" those under the Sixth Amendment, Maj. slip op. at 46-48, does not actually say that. Rather, in *Perry*, we simply reiterated that, despite treating the rights to counsel under Article 21 and the Sixth Amendment *in pari materia*, we retain the *authority* to interpret Article 21 independently—just as all state courts do in matters of state law, so long as they respect federal constitutional requirements. 357 Md. at 85 n.11. As we stated there:

> The conclusions announced in this Opinion on this issue constitute our construction of the independent Maryland Constitutional provision. If the Supreme Court were to rule upon the issue, we obviously would be bound by its judgment when interpreting the Sixth Amendment, and we certainly would give due and respectful consideration to it in any future construction of Article 21, but it would not serve, on its own, to alter the declaration made in this Opinion regarding Article 21.

18

*Id.*

That we have the authority to provide criminal defendants greater protections under the Maryland Constitution than under the federal Constitution, however, does not *require* us to do so, and we should not do so without providing the parties with notice and opportunity to address the issues. As we recently confirmed in *Newton v. State*:

> We have repeatedly stated that "[t]here is no distinction between the right to counsel guaranteed by the Sixth Amendment of the U.S. Constitution and Article 21 of the Maryland Declaration of Rights." In [*State v.*] *Colvin*, we flatly rejected a request to depart from *Strickland* and establish an ineffective-assistance of counsel test under the Maryland Constitution. 314 Md. at 23-24, 548 A.2d 506. Instead, we held that the *Strickland* standard applies to ineffective-assistance-of-counsel claims under the Maryland Constitution and considered the matter "settled." *Id.*

455 Md. 341, 362 (2017), *cert. denied*, 138 S. Ct. 665 (2018) (citations omitted); *see also State v. Tichnell*, 306 Md. 428, 440 (1986) (quoting *Harris v. State*, 303 Md. 685, 695 n.3 (1985)).

In sum, the Majority resolves this case on alternative grounds not raised by the parties and overturns our recent pronouncement that ineffective-assistance-of-counsel claims under Article 21 and the Sixth Amendment are governed by the same *Strickland* standard. And the Majority does this without requesting input from the parties. To say that I disagree with this approach would be an understatement.

### *Claims Under the Sixth Amendment*

The Sixth Amendment to the United States Constitution provides, in relevant part, that the accused in criminal cases "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Inherent in the right to assistance of

19

counsel is the right to the *effective* assistance of counsel. *Strickland*, 466 U.S. at 686. A defendant's right to the effective assistance of counsel can be violated in two ways: (1) through direct governmental interference; or (2) through trial counsel's failure to "render 'adequate legal assistance[.]'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)).

The primary case on which Mr. Clark relies, *Geders*, exemplifies the first type of Sixth Amendment claim: governmental interference. *See Strickland*, 466 U.S. at 686 (citing *Geders* for the proposition that "[g]overnment violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense").

In *Geders*, at the conclusion of the defendant's direct examination, but before the prosecutor's cross-examination began, the court recessed for the night. 425 U.S. at 82. At the prosecutor's request, the court instructed Geders not to discuss the case with anyone. *Id.* Geders' attorney objected, "explaining that he believed he had a right to confer with his client about matters other than the imminent cross-examination, and that he wished to discuss problems relating to the trial with his client." *Id.* The trial court responded that it trusted counsel to "properly confine the discussion," but did not trust the defendant to abide by any restrictions. *Id.* The court promised to give defense counsel time to meet with the defendant after cross-examination. *Id.* Defense counsel persisted in his objection, at one point stating that "[t]here are numerous strategic things that an attorney must confer with his client about" and gave, as one example, the topic of whom defense counsel should call

as the next witness. *Id*. at 82-83, 83n.1. The court was unmoved. *Id.* at 83 n.1. Geders was subsequently convicted. *Id.* at 85.

On appeal to the United States Court of Appeals for the Fifth Circuit, Geders argued, among other things, that the trial court violated his Sixth Amendment right to communicate with counsel during a critical stage of the trial. *United States v. Fink*, 502 F.2d 1, 8 (1974).[8] The Court disagreed, finding that the trial court did not commit reversible error, reasoning that Geders had failed to show that he was harmed by the deprivation of counsel during the overnight recess. *Id*. at 8-9. In other words, the Fifth Circuit rejected Geders' appeal because he had failed to show prejudice from the trial court's improper instruction.

The United States Supreme Court reversed. *Geders*, 425 U.S. at 91. The Court determined that the trial court violated Geders' right to counsel because the court's order precluded him from discussing anything with his attorney during the 17-hour overnight recess. *Id.* The Court did not mention, let alone expressly impose, a requirement of prejudice, and in subsequent cases the Court confirmed that a showing of prejudice is not required in such circumstances in a direct appeal.[9] *See, e.g.*, *Perry v. Leeke*, 488 U.S. 272, 279-80 (1989) (confirming that a *Geders* violation requires no showing of prejudice); *Weaver v. Massachusetts*, 582 U.S. 286, 305 (2017) (holding that, on direct appeal, a preserved claim of structural error entitles a defendant to automatic reversal).

---

[8] Geders' appeal was consolidated with that of his co-defendant, Michael Fink.

[9] The Court in *Geders* did not expressly state that a showing of prejudice was not required. However, by reversing the Fifth Circuit—which had rejected Geders' claim because he had failed to show prejudice—the Court implicitly determined that a showing of prejudice was not required.

21

As noted above, the second way a defendant can be deprived of his right to the effective assistance of counsel is by defense counsel's failure to "render 'adequate legal assistance[.]'" *Strickland*, 466 U.S. at 686 (quoting *Cuyler*, 446 U.S. at 344). Claims of ineffective assistance of counsel are governed by the two-part test articulated in *Strickland*—known as the performance and prejudice prongs:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687. Courts need not address these prongs in any specific order, and if a claim fails under one prong, the other prong need not be addressed. *Id*. at 697; *Newton*, 455 Md. at 356. Here, the Appellate Court addressed and resolved the claim solely on the prejudice prong.

### *Prejudice Under* Strickland

To establish prejudice under *Strickland*, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The Supreme Court defined "reasonable probability" in this context as a "probability sufficient to undermine confidence in the outcome." *Id*. The Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

22

This Court has echoed that point, explaining that "[a] proper analysis of prejudice . . . should not focus solely on an outcome determination, but should consider 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *Oken v. State,* 343 Md. 256, 284 (1996) (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)); *see also Newton*, 455 Md. at 357 (finding that prejudice is proven by showing that the outcome of the trial would have been different or that the error rendered the trial "fundamentally unfair").

There are, however, "very narrow" circumstances when prejudice under *Strickland* is presumed. *Walker v. State*, 391 Md. 233, 247 (2006); *Ramirez*, 464 Md. at 564. If one of the narrow exceptions applies, instead of requiring the defendant to *prove* the result probably would have been different but for counsel's errors, the court will *presume* that the result would have been different but for counsel's errors. *See Strickland*, 466 U.S. at 692-94.

"[P]rejudice is presumed when counsel is burdened by an actual conflict of interest" because "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Id.* at 692. Prejudice is also presumed when there is an "[a]ctual or constructive denial of the assistance of counsel altogether" or with "various kinds of state interference with counsel's assistance." *Id*. (citing *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984)). As we held in *Ramirez*, "a court should presume that trial counsel's performance prejudiced the petitioner only if: (1) the petitioner was actually denied the assistance of counsel; (2) the petitioner was constructively denied the assistance

of counsel; or (3) the petitioner's counsel had an actual conflict of interest."[10] 464 Md. at 573. We also confirmed that "[a]bsent these three circumstances, the presumption of prejudice does not apply, and the petitioner must prove prejudice." *Id.*

### The Test for the Actual Denial
### Exception Under **Strickland** *and* **Ramirez**

Sixth Amendment claims based on ineffective assistance of counsel are entirely "different matters[s]" from Sixth Amendment claims based on "direct governmental interference." *Perry*, 488 U.S. at 279. One key difference is that in "contrast" to a direct appeal, "[p]ostconviction courts . . . assess ineffective-assistance-of-counsel claims through the *Strickland* lens and do not address the merits of particular trial court errors." *Ramirez*, 464 Md. at 566.

The Majority goes astray by relentlessly training its focus on the consequences of the trial court's improper order.[11] However, to satisfy *Strickland*, the causal agent of the

---

[10] The Majority downplays the significance of this passage by mischaracterizing it as just something that this court "has stated[.]" In fact, in *Ramirez*, we specifically began the passage with the phrase "We hold that . . . " 464 Md. at 572-73. This was a holding, not a mere statement.

[11] *See, e.g.*, Maj. slip op. at 27 ("Violations of the rule against flatly prohibiting consultation between a criminal defendant and his lawyer during a substantial recess are treated as complete denials of counsel (even though they are of limited duration), and so require reversal even if no prejudice is shown." (quotation omitted)), 29 ("Consistent with this Court's case law, however, other courts have treated a lengthy or overnight unobjected-to no-communication order itself as a denial of the assistance of counsel, without requiring a showing of an intent by the defendant or counsel to speak with each other but for the order."), 43 ("Barring all communication between a defendant and trial counsel about the case for such a long period of time during a criminal trial eviscerates that right, and a defendant should not be required to prove or show how the right would have been exercised to demonstrate prejudice."), 44 ("Rather, the emphasis on the 'denial' of the right reflects

24

prejudice—presumed or actual—must be defense counsel's deficient performance, *not* the trial court's erroneous order. The Supreme Court made that clear in *Strickland* by using the "but for" language identified above. The Court in *Strickland* also made that clear when, in referring the prejudice requirement, it stated that "the defendant must show that the *deficient performance* prejudiced the defense." *Strickland*, 466 U.S. at 687 (emphasis added). From a grammatical standpoint, this sentence unambiguously identifies counsel's "deficient performance" as the causal agent of the necessary prejudice.

Indeed, we made this same point in *Ramirez*, where we quoted *Strickland* verbatim and said:

> To satisfy the prejudice prong, a petitioner "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable."

*Ramirez*, 464 Md. at 561 (quoting *Strickland*, 466 U.S. at 687). Further, in *Ramirez*, we expressly identified counsel's deficient performance as the causal agent when applying the test for presuming prejudice in ineffective-assistance-of-counsel claims. Again, notice the grammatical structure of our holding in *Ramirez* that, although quoted above in full, I

how a lengthy no-communication order itself prevents access to counsel during a critical stage of a criminal proceeding. The focus is on the order's interference with Mr. Clark's right to counsel, by creating a 'sustained barrier to communication[.]'"), 50 ("The logic behind this approach is that prohibitions on consultation for such periods of time are likely to infringe on the defendant's 'right to unrestricted access to his lawyer for advice on a variety of trial-related matters[.]'") ("The constitutional infirmity of <u>Geders</u>-like no-communication orders is 'driven by the recognition that certain types of conduct are *in general* so antithetic to effective assistance . . . that a case-by-case analysis simply is not worth the cost of protracted litigation[.]'").

truncate here: "We hold that, in assessing a petitioner's allegation of ineffective assistance of counsel, *a court should presume that trial counsel's performance prejudiced the petitioner* only if . . . the petitioner was actually denied the assistance of counsel[.]" *Id.* at 572-73 (emphasis added). So, whether we presume or require proof that the outcome was unfair or unreliable, *Strickland* and *Ramirez* compel us to focus on the consequences of trial counsel's failure to object to the court's improper instruction, not the consequences of the instruction itself.

So let's now consider whether Mr. Clark is entitled to a presumption of prejudice. Of the three available exceptions identified in *Ramirez*, Mr. Clark does not contend that either the constructive denial[12] or conflict-of-interest exceptions apply. That leaves the "actual denial" exception as the lone basis to support a presumption of prejudice.

Following the Supreme Court's lead, this Court adopted a specific test for applying the "actual denial" exception. In *Ramirez*, just two paragraphs after listing the three exceptions, we explained that "[a]ctual denial of the assistance of counsel occurs where 'counsel was either totally absent, or prevented from assisting the [petitioner] during a

---

[12] The "constructive denial" exception applies "where, even though counsel was neither absent nor prevented from assisting the petitioner during a critical stage of the proceeding, the circumstances still amount to a denial of the assistance of counsel." *Ramirez*, 464 Md. at 574. Constructive denial occurs where, for example, "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[.]" *Id.* A fair reading of the trial transcript would lead any reasonable observer to conclude that the failure to object to the trial court's no-communication order did not prevent defense counsel from mounting a rigorous defense at every stage of the trial. Mr. Clark does not even invoke the constructive denial exception; thus, it's not clear why the Majority does. Maj. slip op. at 43-44.

critical stage of the proceeding.'" 464 Md. at 574 (quoting *Cronic*, 466 U.S. at 659 n.25). Notice two grammatical features from this definition.[13] *First*, notice the use of the word "prevented." This means the "actual denial" exception requires that defense counsel be *prevented* from doing something he otherwise would have done; the test doesn't contemplate theoretical possibilities.

*Second*, notice the use of the passive voice—we didn't say who or what was doing the "prevent[ing]." But, again, there are only two theoretical possibilities: (1) the trial court's error; or (2) defense counsel's deficient performance. As explained above, just two paragraphs earlier, we had already identified the causal agent in a *Strickland* claim as counsel's deficient performance. Unlike in a direct appeal, it would be legally impossible in a *Strickland* claim to blame the trial court's error on the lack of communication because, as explained below, we must presume that the trial court would have rescinded its no-communication order had counsel objected.

In sum, a faithful application of *Ramirez* tells us that: (1) the causal agent at the heart of our inquiry is defense counsel's deficient performance; and (2) to get the benefit of the "actual denial" exception to the requirement of proving prejudice, defense counsel's deficient performance must prevent defense counsel from rendering some form of assistance to the defendant that he otherwise would have provided.[14]

---

[13] We can disregard the "totally absent" part of the test—neither Mr. Clark nor the Majority contend that defense counsel was totally absent.

[14] The Majority tries to evade application of *Ramirez*'s test for "actual denial," shrugging it off as doing nothing "more than quot[ing] existing Supreme Court caselaw."

27

Using *Ramirez*'s carefully articulated framework, we can now apply the "actual denial" exception to the facts of this case. Here, defense counsel's deficient performance was his failure to object to the no-communication order, and the assistance of counsel that was allegedly prevented was communicating with Mr. Clark. So, the question boils down to whether defense counsel's failure to object to the no-communication order "prevented" defense counsel and Mr. Clark from communicating with each other "during a critical stage of the proceeding." *See Ramirez*, 474 Md. at 574.

To understand whether counsel's failure to object prevented any communications with Mr. Clark, we must contemplate what would have happened if defense counsel *had* objected. In doing so, we must assume that had counsel objected, the trial court would have recognized its error and withdrawn the "no-communication order." *See Newton*, 455

---

Maj. slip op. at 26 & n.9. But that is exactly the point—in *Ramirez*, we adopted the Supreme Court's definition of "actual denial"; we should faithfully apply it here. Moreover, although the "actual denial" test was not the focal point of the decision in *Ramirez*, our adoption of the Supreme Court's test was not superfluous, as the Majority implies. *Id*. In the second paragraph of *Ramirez,* this Court stated: "[t]his case requires us to determine whether trial counsel's conduct fell below an objective standard of reasonableness, and, if so, whether a presumption of prejudice applies, or whether the petitioner must prove prejudice, where he alleges that trial counsel's conduct resulted in structural error." 464 Md. at 539. There, the alleged deficient performance was counsel's failure to object to a trial court's structural error. We specifically determined on our own "independent review" of the record that "there was no '[a]ctual or constructive denial of the assistance of counsel altogether[,]' and *Ramirez*'s trial counsel was not 'burdened by an actual conflict of interest.'" *Id*. at 577. In *Ramirez,* therefore, this Court both articulated and applied the actual denial of counsel exception.

28

Md. at 361.[15]  But that just means that had trial counsel objected, he and Mr. Clark would have been *permitted* to communicate during the overnight recess.  Then what?

It does not necessarily follow that they would have spoken during the recess.  In *Geders*, defense counsel expressly told the court that he wanted to communicate with his client during the recess, 425 U.S. at 82-83, so there was no dispute that the trial court's instruction prevented such communication.  And although the Supreme Court recognized that defense counsel and defendants often use overnight recesses to discuss the status of the case, trial strategies, plea bargain offers, and other matters, *id.* at 88, neither the Supreme Court nor this Court has ever held that the Sixth Amendment *requires* defense counsel to use an overnight recess to discuss such matters, regardless of the circumstances.  Here, as Mr. Clark's trial counsel testified, the reason he did not speak up when the court issued the improper instruction was that he had nothing to discuss with Mr. Clark, and Mr. Clark expressed no desire to speak with him.  Notably, although Mr. Clark took the stand and contradicted his counsel on other issues, he did not dispute counsel's testimony on *this* issue; that is, he did not say that he did, in fact, want to speak with counsel.

Let's change the facts slightly.  Hold every fact constant except assume that, earlier in the day, defense counsel told Mr. Clark that he was going straight from court to the opera and would be unavailable to talk during the overnight recess.  Under this scenario, Mr. Clark would have been in the exact same position he was in when he took the stand the

_____

[15] This one assumption sets Mr. Clark apart from *Geders*.  In *Geders*, defense counsel's objection was overruled; here, we must presume defense counsel's objection would have been sustained.

29

next morning. So, if the court had not issued its no-communication order, and there was no evidence that Mr. Clark had any desire to speak with counsel during the recess, would we say he suffered an "actual denial" of counsel when his attorney went to the opera? Would we say that the result of his trial was unreliable because his counsel went to the opera? I think not.

There could be many legitimate reasons for defense counsel not to communicate with the defendant during an overnight recess. For example, depending on the circumstances, defense counsel may want to deprive the prosecutor of any basis to imply that the defendant was coached during the recess. Indeed, in *Geders*, the Supreme Court expressly noted that whether the witness was coached during a recess is fair game for cross-examination and closing argument. 425 U.S. at 89-90. Alternatively, defense counsel could have determined that he and the defendant had already fully discussed all relevant strategic decisions, that he was fully prepared for the next day's proceedings, and that he would serve his client best by turning off his cell phone and going to bed early to be rested and refreshed the next day.[16]

Here, of course, I am assuming that trial counsel's failure to object constituted deficient performance. But in its *effect*—which is what matters under *Strickland*'s prejudice prong—defense counsel's failure here to object to the no-communication order is indistinguishable from a legitimate strategic decision by counsel not to speak with the

---

[16] I am not saying that these two possible reasons for trial counsel to render himself unavailable are per se reasonable strategic decisions. They are only hypothetical examples that I use merely to make my point.

30

defendant during the overnight recess or trial counsel's decision to go to the opera. I perceive no reason to presume that Mr. Clark's trial was unfair or that its result was unreliable—the hallmark of prejudice—when an identically-situated defendant who did not communicate with counsel for a different reason would enjoy no such presumption.

*Unless*, of course, there was evidence that Mr. Clark *wanted* to confer or *would have* conferred with his counsel during the overnight recess. If such evidence existed, then Mr. Clark's lack of communication with counsel would have put him on a different footing than the hypothetical defendant who did not communicate with counsel for other reasons, including legitimate ones. That is, with evidence that Mr. Clark wanted to or would have communicated with counsel if his attorney had objected to the instruction, we could then say that counsel's failure to object *prevented* him from rendering assistance he otherwise would have rendered—that defense counsel's failure to object *caused* an *actual denial* of counsel. And with that causal connection established, we could then presume, as *Strickland* demands, that the outcome of Mr. Clark's trial was unreliable.

The Majority tries to recast the meaning of "prevent" as this Court used it in *Ramirez* in defining the "actual denial of counsel" by disclaiming any requirement that "a postconviction petitioner demonstrate or prove that petitioner would have spoken with counsel in order to be entitled to a presumption of prejudice." Maj. slip op. at 54. In doing so, the Majority refers to various dictionary definitions of "prevent," claiming that "[n]othing about the definition of the word prevent requires proof by a defendant that the defendant wanted to speak with counsel in order for the defendant to have prevented from doing so." *Id.* at 55.

31

The Majority first cites to Merriam Webster's definition of prevent: "to keep from happening or existing" and "to deprive of power or hope of acting or succeeding." *Id.* at 54. The Majority next cites to an Oxford English Dictionary definition of prevent: "[t]o preclude the occurrence of (an anticipated event, state, etc.)". *Id*. at 54-55. In my mind, these definitions confirm that the word "prevent" necessarily implies that something would have happened but for the thing doing the preventing.

The Majority offers an example of a sentence that it contends demonstrates that prevent means something other than, well, prevent. The Majority asks us "to consider how the word prevent is used in the following sentence: 'The gate prevented access to the driveway.'" *Id.* at 55. The Majority asserts that, as used in this sentence, "[i]t is not necessary to prove that anyone wanted to use the driveway to establish that the gate prevented or blocked access." *Id.* This is a flawed analogy. Remember, the inquiry here is whether there was an "actual" denial of counsel, not a theoretical one. The statement that a gate prevented access to a driveway is merely a general description of an existing condition, and the use of the word "prevented" necessarily implies that the driveway would ordinarily be accessible. If I'm in a different country when the gate was blocking access to the driveway, one cannot appropriately say that the gate prevented *me* from accessing the driveway. Similarly, if the defendant and defense counsel had no desire or inclination to communicate during a recess, one cannot say that defense counsel's failure to object prevented such communication.

I would hold, therefore, that under *Strickland*, if defense counsel's alleged deficient performance is the failure to object to a trial court's improper order barring all

32

communications between the defendant and his counsel, the defendant does not enjoy a presumption of prejudice without showing at least *some* evidence that counsel's failure to object either prevented communication or created a chilling effect on such communications. In addition to being based on *Strickland* and *Ramirez*, my view is informed by several considerations.

*First*, my proposed holding would preserve the careful distinction between direct appeals from trial errors and ineffective-assistance-of-counsel claims based on the failure of counsel to object to a trial error. This is true even if we assume, as many courts have,[17] that a trial court's *Geders* violation constitutes a structural error.[18]

---

[17] *See, e.g.*, *Cronic*, 466 U.S. at 659 n.25 (citing *Geders* as an example when stating that "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding"); *United States v. Triumph Cap. Grp., Inc.*, 487 F.3d 124, 131 (2d Cir. 2007) ("[I]t is well settled that, in the *Geders* context, 'a violation of a defendant's Sixth Amendment right to counsel . . . constitutes a structural defect which defies harmless error analysis and requires automatic reversal.'" (quoting *Jones v. Vacco*, 126 F.3d 408, 416 (2d Cir. 1997)); *State v. Ring*, 65 P.3d 915, 933 (Ariz. 2003) (en banc) (citing *Geders* as an example where "[t]he Supreme Court has defined relatively few instances in which we should regard error as structural"); *United States v. Nelson*, 884 F.3d 1103, 1107-08 (11th Cir. 2018) (leaning in favor of deciding, without deciding, that a *Geders* violation is a structural error).

[18] As we stated in *Ramirez*:

A structural error is an error that inheres in the trial's structure—*i.e.*, "the framework within which the trial proceeds"—and that "affect[s] the trial from beginning to end, and necessarily render[s it] fundamentally unfair." Redman v. State, 363 Md. 298, 303 n.5, 768 A.2d 656, 659 n.5 (2001) (cleaned up). Meanwhile, a trial error is "an error in the trial process itself"—*i.e.*, "an error [that] occur[s] during the presentation of the case to the jury[.]" Id. at 303 n.5, 768 A.2d at 659 n.5 (cleaned up). On direct appeal, a structural error always

---

The distinction between these two types of claims, in the context of an underlying structural trial error, was addressed in *Weaver v. Massachusetts*, 582 U.S. at 294-99. There, during jury selection for the defendant's trial on criminal charges, all of the seats in the courtroom were occupied by potential jurors, barring public access for two days of the jury selection process. 582 U.S. at 290. The denial of the defendant's right to a public trial was a structural error that would have entitled him to a new trial had defense counsel preserved the issue for direct appeal. *Id*. at 293. But because defense counsel failed to object, the matter came before the Supreme Court in the context of a claim of ineffective assistance of counsel. *Id.* In rejecting this claim, the Court focused on, *inter alia*, the difference between public trial violations preserved for direct appellate review and those raised in a post-conviction proceeding. *Id.* at 294-99.

The Court explained that when a defendant preserves an issue by timely objecting to the trial court's improper ruling, the trial court can correct its error or further explain the basis for its decision. *Id*. at 302–03. But if the issue is first raised in a post-conviction claim of ineffective assistance of counsel, the court is deprived of that opportunity. *Id.* In Maryland, giving the trial court the opportunity to make the correct decision is, of course, the fundamental rationale behind our firmly entrenched preservation requirement. *See Robinson v. State*, 410 Md. 91, 103 (2009) (explaining that the two purposes of Maryland Rule 8-131(a), ensuring fairness to all parties and the promotion of the orderly

> warrants reversal of the defendant's convictions, and cannot be deemed harmless. See id. at 303 n.5, 768 A.2d at 659 n.5.

464 Md. at 539 n.1.

34

administration of the law, are "advanced by requiring counsel to bring the position of their client to the attention of the lower court at trial *so that the trial court can pass upon, and possibly correct any errors in the proceedings*" (emphasis added) (citations omitted)); *Boulden v. State*, 414 Md. 284, 297 (2010) (same); *Blanks v. State*, 406 Md. 526, 538 (2008) (same).

The United States Supreme Court in *Weaver* also explained that when a trial court error is properly preserved for direct appellate review, the risk of memories fading and evidence disappearing is reduced. 582 U.S. at 302. In contrast, "[w]hen an ineffective-assistance-of-counsel claim is raised in postconviction proceedings, the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases." *Id.* Thus, the "profound importance of finality in criminal proceedings," *Strickland*, 466 U.S. at 693, "is more at risk" when a trial court's error is raised for the first time in a post-conviction claim of ineffective assistance of counsel, *Weaver*, 582 U.S. at 302-03. The Supreme Court cautioned against allowing such claims to be used for evading the preservation requirement, "thus undermining the finality of jury verdicts." *Weaver*, 582 U.S. at 302-03 (citation omitted).

Further, according to the United States Supreme Court, a direct appeal provides an adequate record from which appellate courts can give guidance and instruction to trial courts. *Id.* at 302. In contrast, as this Court has observed, "[p]ostconviction courts . . . assess ineffective-assistance-of-counsel claims through the *Strickland* lens and do not address the merits of particular trial court errors." *Newton*, 455 Md. at 356; *see also Ramirez*, 464 Md. at 383 (quoting *Newton*, 455 Md. at 356). The Court in *Weaver*

concluded that the foregoing differences "justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel."  582 U.S. at 303.

This Court has consistently interpreted *Weaver* as "imposing a *higher* standard for granting a new trial when a defendant raises a structural error on postconviction, rather than on direct appeal."  *Newton*, 455 Md. at 356-57 (emphasis added); *see also Ramirez*, 464 Md. at 566.  In *Newton v. State*, 455 Md. at 348, with defense counsel's consent, an alternate juror was present in the jury room during its deliberations, even though this Court, in *Stokes v. State*, 379 Md. 618 (2004), held that sending the alternate juror into the deliberations over counsel's objection constituted reversible error.  Newton's counsel was unaware of *Stokes* and therefore did not know to object, thus forming the basis for Newton's post-conviction claim of ineffective assistance of counsel.  *Newton*, 455 Md. at 349-52.  Newton argued that the trial court's inclusion of the alternate juror in the jury room was a structural error rendering the trial fundamentally unfair.  *Id.* at 352.  On that basis, he argued that prejudice under *Strickland* should be presumed.  *Id.* at 352-53.

We rejected Newton's claim, observing that "*Stokes* was a direct appeal, and errors that would result in automatic reversal on direct appeal may not warrant a new trial when raised as part of a postconviction ineffective-assistance-of-counsel claim."  *Id.* at 359 (citing *Weaver*, 582 U.S. at 301).  Noting that the Supreme Court in *Weaver* identified only

36

"a handful of circumstances that render a trial fundamentally unfair,"[19] we concluded that

it was:

> unfathomable that the mere presence of an alternate during jury deliberations—with the express consent of defense counsel and strict instructions to the juror to listen only—gives rise to nearly as grave constitutional concerns as the circumstances presented in the four cases above considered by the Supreme Court to be "fundamentally unfair."

*Id*. at 361.

This Court also addressed the intersection between structural errors and defense counsel's failure to object to the same in *Ramirez*. There, trial counsel failed to object to "the seating of a biased juror[,]" which Ramirez claimed resulted in a structural error entitling him to the presumption of prejudice under *Strickland*. *Ramirez,* 464 Md. at 541. Although we did not find that trial counsel caused a structural error by his failure to object, we emphasized that in *Weaver*, the Supreme Court had "made clear that the distinction between structural errors matters only on direct appeal—not in a postconviction proceeding." *Ramirez*, 464 Md. at 576. We reached that conclusion after carefully reviewing decisions from this Court, as well as *Weaver*. *See Ramirez*, 464 Md. at 564-66, 574-76 (discussing *Newton*, 455 Md. 341, *Redman v. State*, 363 Md. 298 (2001), and *Bowers v. State*, 320 Md. 416 (1990)). For example, referring to our opinion in *Newton*, we stated in *Ramirez*:

---

[19] Specifically, we referred to the following list of circumstances listed in *Weaver*: "the complete deprivation of counsel . . . ; the failure to give a reasonable doubt jury instruction . . . ; a biased judge . . . ; and the race-based exclusion of grand jurors . . . ." *Newton*, 455 Md. at 361 (internal citations omitted); *see also Weaver*, 582 U.S. at 295, 300-01 (listing these errors as fundamentally unfair structural errors).

This Court observed that, in Weaver, 137 S. Ct. at 1911, the Supreme Court held that, "even though a public-trial right violation requires automatic reversal on direct appeal, it is still analyzed under the *Strickland* framework when raised as part of an ineffective-assistance-of-counsel claim." Newton, 455 Md. at 356, 168 A.3d at 9. This Court also noted that, in Weaver, 137 S. Ct. at 1912, the Supreme Court explained that there is "a higher standard for granting a new trial when a defendant raises a structural error on postconviction, rather than on direct appeal." Newton, 455 Md. at 357, 168 A.3d at 10.

464 Md. at 576.

The Majority's holding in this case obliterates the firmly entrenched distinction between direct appeals in which a trial court's error is preserved and ineffective-assistance-of-counsel claims based on the failure to preserve.

*Second*, my proposed holding would not impose an onerous or unfair burden on the defendant to secure the benefit of *Strickland*'s presumption of prejudice. In fact, it would be setting the bar low. By their nature, claims for ineffective assistance of counsel often open the door to the substance of communications between the defendant and trial counsel. An ineffective-assistance claim based on counsel's failure to object to the *Geders* violation is the sort of claim that could (and should) be substantiated without opening that door. For example, if Mr. Clark had testified that he would have wanted to revisit with counsel the strategic issue of whether his wife (or any other potential witness) should testify—a tactical decision he challenged in his post-conviction claim—the post-conviction court would have had a sufficient basis to find that counsel's failure to object to the *Geders* violation prevented or chilled the possibility of such a communication, thereby entitling Mr. Clark to a presumption of prejudice under *Strickland*. Such testimony would not have opened

38

the door for the State to cross-examine the defendant on the *substance* of his prior discussions with counsel or the *substance* of what he specifically wanted to discuss.

Moreover, a defendant would not have to identify a specific strategic issue that he wanted to discuss with counsel to clear the low hurdle I have proposed. If the post-conviction court concludes based on the testimony before it that, for example, the defendant wanted to have a general discussion about the trial, the day's events, or defendant's concerns or anxieties about the case, that too would suffice to clear the low bar my proposed holding would set. In other words, the mere fact that a defendant would have discussed with counsel anything relevant to the trial or case, general or specific, would justify a presumption of prejudice without requiring the defendant to divulge otherwise confidential communications. *See, e.g.*, *Bailey v. Redman*, 657 F.2d 21, 24 (3d Cir. 1981) (per curiam). This would not be, as the Majority insists, an insurmountable hurdle for a defendant.

*Third*, my proposed holding aligns the parties' incentives in a way that promotes the fair and efficient administration of justice. One clear benefit of the Majority's holding is that the State would have the incentive to speak up if the trial court issues an improper no-communication order. But the State would have the same incentive to speak up under the low bar I would set for establishing the actual denial of counsel.

But under the Majority's holding, a defendant having no desire or need to speak with counsel during the overnight recess might be better served if counsel did *not* object. That way, the defendant could take a free shot at an acquittal while simultaneously securing

39

a strong basis for a new trial—the proverbial second bite at the apple—through a post-conviction claim.

We prefer that the first trial be fair and error-free, obviating the need for a second one. By incentivizing *both* sides to timely inform the trial court of a *Geders* violation, my proposed holding would align the parties' interests to minimize the likelihood that a new trial would be necessary. The same cannot be said of the Majority's holding.

*Fourth*, my proposed holding does not conflict with the concern expressed by Judge Nazarian, and echoed by the Majority, that "the right to counsel was Mr. Clark's, not his counsel's to waive or neglect away." *Clark*, 255 Md. App. at 349 (Nazarian, J., dissenting). Mr. Clark's counsel's failure to object waived only his right to raise the trial court's improper instruction on direct appeal. Moreover, if trial counsel "neglects away" a defendant's right to counsel, the defendant has recourse in a post-conviction claim applying *Strickland*'s principles, including this Court's formulation of the "actual denial" presumption of prejudice expressed in *Ramirez* and applied above. I am aware of no caselaw—and the Majority cites none—that would justify bypassing *Strickland*'s and *Ramirez*'s requirements for this one type of ineffective-assistance-of-counsel claim.[20]

---

[20] To the contrary, the rulings from federal and state courts that have considered *Geders* violations raised in the context of an ineffective-assistance-of-counsel claim have held that the defendant must show that a communication with counsel would have occurred. *See, e.g.*, *Bailey*, 657 F.2d at 24-25; *Stubbs v. Bordenkircher*, 689 F.2d 1205, 1206-07 (4th Cir. 1982) (in a habeas corpus matter claiming ineffective assistance of counsel based on counsel's failure to object, the defendant was denied relief because there was no evidence that the defendant wanted to meet with counsel); *Wallace v. State*, 851 So. 2d 216, 217-18 (Fla. Dist. Ct. App. 2003) (denying post-conviction claim of ineffective assistance of counsel where defense counsel did not object to the trial court's instruction

40

There is no evidence that trial counsel's failure to object to the court's instruction prevented or chilled communication with Mr. Clark during the overnight recess, and the post-conviction court made no such finding. Because he did not establish an "actual denial" of counsel, Mr. Clark was not entitled to the presumption under *Strickland* and *Ramirez* that his counsel's failure to object deprived him of a fair trial or a reliable verdict. Thus he was required to establish prejudice.

The post-conviction court found prejudice in that trial counsel's failure to object deprived Mr. Clark of a viable appellate issue. As noted above, however, under *Newton*, 455 Md. at 361, we must assume that had trial counsel objected, the court would have rescinded the instruction and in doing so, would have removed any basis to appeal it. Having failed to establish presumed or actual prejudice under *Strickland*, Mr. Clark was not entitled to post-conviction relief based on his counsel's failure to object to the *Geders* violation.

In holding otherwise, the Majority has conducted in effect, if not in name, a plain error review of the trial court's improper no-communication order. Generally, appellate courts have the discretion to conduct plain error review of an unpreserved trial court error "when the error is compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *Savoy v. State*, 420 Md. 232, 243 (2011) (cleaned up). That standard may very well have been met here, but when the Appellate Court declined to conduct plain

---

not to talk during the lunch recess and there was no evidence that defendant or his counsel desired to communicate during the recess).

41

error review in his direct appeal, Mr. Clark initially petitioned this Court for writ of certiorari but then withdrew it, depriving us the opportunity to address the issue.

The procedural posture here alone should have precluded the Majority from treating Mr. Clark's post-conviction claim as it would have treated a direct appeal from the no-communication order. Instead, the Majority bypasses *Strickland* and violates *Newton* and *Ramirez* by assessing the propriety of the trial court's no-communication order and analyzing Mr. Clark's post-conviction claim as a straightforward *Geders* claim, which as I have explained, it was not empowered to do.

Accordingly, I respectfully dissent.

Chief Justice Fader and Justice Booth have authorized me to state that they join this opinion.